**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Vernon LOVE, Jr., d/b/a Love Trucking, LaVerne Love, his wife, Sherwin Tukel, and St. Paul Fire and Marine Insurance Company, a Corporation, Defendants.**

**Civ. A. No. 34961.**

United States District Court,
E. D. Michigan, S. D.

March 23, 1971.

Sherwin Tukel, Detroit, Mich., for defendants Vernon & LaVerne Love.

Allan H. Tushman, Detroit, Mich., for defendant Tukel.

Ralph B. Guy, Jr., U. S. Atty., by J. Kenneth Lowrie, Asst. U. S. Atty., Detroit, Mich., Elaine R. Crane, Dept. of Justice, Washington, D. C., for plaintiff.

### RULING ON MOTION FOR SUMMARY JUDGMENT

KEITH, District Judge.

On December 18, 1968, the Small Business Administration made a loan to defendants, Vernon Love, Jr., and LaVerne Love, to enable them to purchase a tractor-trailer. The Loves executed a note in the amount of Nine Thousand ($9,000.00) Dollars, and as collateral the Small Business Administration took a security interest in the tractor-trailer, which was duly recorded. Paragraph six of the Security Agreement provides that the defendant maintain an insurance policy on the tractor-trailer and that the policy contain a "Lenders Loss Payable Clause" naming the Small Business Administration as beneficiary. The Loves did purchase such a policy from the defendant, St. Paul Fire and Marine Insurance Company. On June 14, 1969, the tractor-trailer was totally destroyed. No payments on the note have been made to date. According to the terms of the note the indebtedness becomes due in its entirety upon default of any part of the indebtedness. Defendant Tukel was retained by defendants Love in order to try to reach an agreement with the insurance company. The parties reached a settlement and a net figure of Fifty-Two Hundred ($5200.00) Dollars was agreed upon. A check was issued to all the parties involved, however, it was not accepted by the Small Business Administration. (Recently the insurance company paid Fifty-Two Hundred ($5200.00) Dollars into the Court.) During the course of the events which have been just described the Small Business Administration voluntarily subordinated its first lien to Joe Solner, Inc. There is no dispute as to priorities which exist between the Small Business Administration and Joe Solner, Inc.

Cross-motions for summary judgment have been filed and argument was heard in open Court. Mr. Tukel argues that the United States should be estopped from accelerating the balance of the loan due to Mr. Love's reliance on the apparent authority of Mr. Jusis, the loan officer of the Small Business Administration involved in this matter, and that the Small Business Administration owes to Mr. Tukel reasonable compensation for the legal services which he rendered in behalf of and for the benefit of the Small Business Administration. The Government opposes the motion and in its own motion argues that there is no genuine issue of fact, and that the plaintiff is entitled to judgment as against all the defendants as a matter of law. The Government argues that an attorney's fee lien does not take priority over the interest of a secured party in the proceeds of an insurance policy on the collateral when the attorney did not represent the secured party and when the interest of the secured party accrued prior in time to the attorney's lien. Further the Government argues that defendants Vernon and LaVerne Love are liable on the note in its entirety.

Mr. Tukel, by affidavit, has in part stated:

"THAT * * * he was retained in his professional capacity to represent co-defendants Love in connection with a casualty loss, whereby a tractor-trailer rig was damaged.

THAT affiant was retained for the purpose of negotiating a settlement of co-defendants Love casualty loss with St. Paul.

THAT in reviewing and investigating co-defendants Love complaint, affiant determined the interests of Solner and the Small Business Administration, and with one Mr. Cramer, an employee of Solner Investment Company on various diverse occasions.

THAT the gist of the various conversations, particularly between affiant and Mr. Jusis was to the effect that Mr. Jusis indicated to affiant that he, Mr. Jusis, was in charge of the file, since Mr. Jusis had made the original loan, that Mr. Jusis was anxious that the loan be made current since it was then some three months in arrearage, that affiant indicated that preliminary negotiations were then proceeding with St. Paul, and that various offers of settlement had been made, and had been rejected because they were insufficient, that thereafter additional telephone conversations were held between affiant and Mr. Jusis, the gist of which were that a more substantial offer had been received from St. Paul, co-defendants Love were inclined to accept the offer, that the terms of the offer were relayed to Mr. Cramer and to Mr. Jusis, that affiant indicated that Love was prepared and willing to pay to Solner Investment Company the entire sum then due and owing to Solner, that additionally, co-defendant Love indicated through affiant that he was willing to pay to the Small Business Administration, from the proceeds of any settlement, the then outstanding arrearage which affiant's notes indicate to be One Thousand, Two Hundred, Sixty ($1,260.00) Dollars, plus Thirty-eight ($38.00) Dollars in interest, which would then make co-defendants Love account current with the Small Business Administration.

THAT Mr. Jusis indicated that on behalf of co-defendants Love he had had conversations with Mr. Cramer, and that Mr. Cramer had indicated a willingness to discount the total sum due for payment in full, that this conversation was relayed to affiant by Mr. Jusis.

THAT at all times Mr. Jusis indicated by action, by intimation, by suggestion that he, Mr. Jusis, had full and complete authority to accept the monies then in arrears from Love and to bring the account of Love current.

THAT Mr. Jusis indicated to affiant that the said loan was an economic opportunity loan with special consideration being given to the borrower.

THAT a discussion was held between Mr. Jusis and affiant concerning the balance of the settlement funds, that your affiant indicated that the balance was fee, since he was representing Love on a fifty (50%) percent contingency basis, that Mr. Jusis understood and acquiesced this arrangement.

THAT Mr. Jusis indicated his full and complete understanding and acceptance of the settlement agreement between the Small Business Administration, Solner Investment Company, Love, and affiant, and accepted and acquiesced in the said settlement on behalf of the Small Business Administration, that Mr. Jusis actively procured acquiescence of Mr. Cramer on behalf of the Solner Investment Company in the said arrangement, that your affiant relied on the representations and understandings implicit and express made to him by Mr. Jusis, and completed the transaction with St. Paul, whereupon Mr. Jusis, on behalf of the Small Business Administration refused and declined to execute the settlement draft."

■ Mr. Tukel's arguments with respect to estoppel and apparent authority

are in error. The Supreme Court has clearly stated that:

"Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he. who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority." Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); also see Royal Indemnity Company v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941); Los Angeles Customs and Freight Brokerage Association v. Johnson, 277 F.Supp. 525 (C.D. Cal. 1967).

In the instant case Government counsel has submitted regulations which indicate that Mr. Jusis did not have the authority to enter into a settlement agreement with Mr. Tukel. Further, Mr. Tukel has not alleged that Mr. Jusis has or had the actual authority to do so. Thus it is clear that even if we accept Mr. Tukel's view of what transpired, he cannot prevail as a matter of law.

■ Defense counsel's next allegation is that the Small Business Administration owes to him reasonable compensation for legal services rendered in behalf of and for the benefit of the Small Business Administration. Counsel argues that "a contract implied in law is quasi or constructive and does not require a meeting of the minds, but is imposed by fiction of law to accomplish justice, * * *." The Government's position is that the Court has no jurisdiction to entertain this claim as it has not been previously pled. Further the Government argues that it may

not be sued unless it consents. See United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). In addition, the Government points out that authority for conferring jurisdiction to hear a claim against the Government may be found in the Tucker Act, 28 U.S.C. § 1346, and that § 1346(a) (2) indicates that a civil action against the United States may be based upon an implied or express contract with the United States. The cases have consistently held that the term "implied" refers to contracts which are implied in fact and not to those contracts which are implied in law. See Alliance Assurance Co. v. United States, 252 F.2d .529 (2nd Cir. 1959); United States v. Minnesota Mutual Investment Co., 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911 (1926); Smith v. United States, 243 F.Supp. 222 (D.C. Arizona 1965). In this case Mr. Tukel's argument appears to be centered around a theory of a contract implied in law. Even if Mr. Tukel's argument can be construed to argue an implied in fact theory it has not been properly raised in the pleadings. Mr. Tukel's claim must fail at this time.

Next we come to the Government's motion for summary judgment. The Government states the first issue as whether or not the attorney's lien takes priority over the interest of a secured party in the proceeds of an insurance company on the collateral when the attorney did not represent the secured party and when the interest of the secured party accrued prior in time to the attorney's fee lien. Mr. Tukel views the question as whether or not his lien became superior to the lien of the Small Business Administration at any time, particularly if more than one offer from St. Paul was made. The relevant dates with respect to this issue are: December 18, 1968, the date on which the Government's lien on the collateral attached; January 20, 1969, the date the insurance policy was issued; June 14, 1969, the date the tractor was destroyed. Mr. Tukel did not become involved in this matter until sometime after June 14, 1969.

Mr. Tukel's position is that "the attorney lien is prior to the lien of the Small Business Administration, except for the amount which defendants concede was owed by law at the time of pending settlement negotiations and that in any event the lien of the Small Business Administration is limited to the amount of the first offer made by St. Paul of $2,000." In support of this Mr. Tukel again refers to his arguments of estoppel and apparent authority. In addition he argues that the Small Business Administration's lien attached only to the first offer made by St. Paul which was in the amount of $2,000. Mr. Tukel has offered no support for his position that the lien of the Small Business Administration is limited to the $2,000, and it is the opinion of the Court that this argument is without merit. Further the Court has already indicated that it did not find the arguments with respect to estoppel and apparent authority to be convincing.

It is well established that in determining priorities when the Federal Government is involved that the Federal Law is to be followed and that the federal rule is "first in time, first in right." *See,* United States v. Buffalo Savings Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283 (1962); United States v. City of New Britain, 347 U.S. 81, 74 S. Ct. 367, 98 L.Ed. 520 (1954). In order for a private lien to be held prior in time, it must be choate. In order to be choate there must be identity of the lienor, of the property bound by the lien, and the amount of the lien must be certain. United States v. Oswald and Hess Company, 345 F.2d 886 (3rd Cir. 1965). Clearly in this instance the Small Business Administration had secured its interest first in time and at that time the attorney's fee was not identified. *See* United States v. Oswald and Hess Company, 345 F.2d at 886. Thus the attorney's fee lien cannot take priority over the Government's claim.

The next and final issue to be determined is whether or not defendant's Vernon and LaVerne Love are liable on the note, and if they are to what extent. The note had been signed by defendants Vernon and LaVerne Love. These defendants do not deny obtaining the loan, nor have they denied that the loan is in default. The affirmative defense of the defendants is that a settlement had been reached and that the Small Business Administration is bound by that settlement. This issue has previously been disposed of in the discussion on estoppel and apparent authority. The note provides that in the event of a default the indebtedness shall become due and payable immediately and in its entirety. No payments have been made on the note and thus as a matter of law the Government is entitled to a judgment against Vernon and LaVerne Love on the note. Further, the Government is entitled to the proceeds of the insurance policy subject to the interest of Joe Solner, Inc.

In view of the foregoing, it is hereby ordered that the Government's motion for summary judgment is granted, and that judgment against Vernon and LaVerne Love in the amount of Nine Thousand ($9,000.00) Dollars plus interest be entered.

It is further ordered that the Government is entitled to the proceeds of the insurance policy.