S. SCHONFELD COMPANY, INC., a/k/a
SSC International, Inc., Plaintiff,

v.

SS AKRA TENARON, her engines,
tackle, machinery, apparel, etc.,
Defendant.

AKRA SHIPPING COMPANY, Claimant-
Third Party Plaintiff,

v.

UNITED STATES of America and D.
Ducharme, Third-Party Defendants.

Civ. A. No. 72–1218.

United States District Court,
D. South Carolina,
Charleston Division.

Sept. 18, 1973.

D. A. Brockinton, Jr., Charleston, S. C., for plaintiff.

P. M. Bishop, Jr., Charleston, S. C., for defendant and third-party plaintiff.

Ronald A. Hightower, Asst. U. S. Atty., Charleston, S. C., for John K. Grisso, U. S. Atty., for third-party defendants.

ORDER

SIMONS, District Judge.

This matter is before the court upon Motion of the third-party defendants for dismissal of the third-party Complaint and/or for Summary Judgment in favor of the third-party defendants. Arguments on the Motion were heard by me in Charleston on August 13, 1973, and the interested parties then filed supplemental Briefs.

Plaintiff's suit against the vessel AKRA TENARON is for cargo damage, the cargo in question being 2700 cartons of canned tomatoes which were loaded aboard the vessel in Spain and discharged at the Port of Charleston. The shipment was found to be damaged to some extent upon discharge, and eventually the entire lot was ordered destroyed by the defendant Ducharme, an inspector for the Pure Food and Drug Administration. The claimant-third party plaintiff impleaded the United States and Ducharme as being responsible for plaintiff's cargo loss. The third-party plain-

tiff's claim against the government is based upon the alleged negligent handling of the cargo by the government agent after the cargo had been lawfully detained. Specifically, it is alleged that the government through its employee Ducharme negligently inspected the goods, had the cargo re-palletized after salvageable cargo had been segregated from the damaged cargo, and refused to make a case-by-case inspection of the tomatoes.

Preliminarily it should be noted that counsel for the third-party plaintiff agreed at the hearing to a dismissal of the third-party claim against the defendant Ducharme individually. Thus the third-party defendant referred to in the remainder of this Order will be the United States.

The government grounds its Motion to Dismiss on two exceptions to the Tort Claims Act. These exceptions are set forth in 28 U.S.C. § 2680:

"The provisions of this chapter [Tort Claims Procedure] and section 1346(b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance, or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

\* \* \* \* \* \*

"(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer."

Thus the government contends that, under these statutory exceptions the third-party plaintiff has no cause of action cognizable under the Tort Claims Act.[1]

The third-party plaintiff's position is that the two exceptions set out above are not a bar to its claim. Akra contends that the exception stated in § 2680 (a) does not immunize the government from liability for negligent acts committed after the "discretionary function" has been exercised, and that the exception stated in § 2680(c) does not exempt the government from liability if a customs officer commits negligent acts causing damages to goods after they have been lawfully detained by him.

At the hearing, the court indicated its agreement with the third-party plaintiff that § 2680(a) did not bar the present claim. There are numerous cases which hold that, once the government has exercised its discretion and has decided to proceed in a matter, then the government is liable for negligent acts done in the course of such proceedings. For a discussion of this doctrine, see, e. g., Hernandez v. United States, 112 F. Supp. 369 (D.Hawaii 1953). As the court is convinced that § 2680(a) does not bar the action asserted in the third-party Complaint, the remaining issue presented by the instant Motion is whether § 2680(c) is sufficient to insulate the government from liability in this matter. Since the third-party plaintiff directed its original Brief primarily to cases arising under § 2680(a), leave was given to both parties after the hearing to submit authorities relating to § 2680(c).

Third-party plaintiff relies primarily on Alliance Assurance Co. v. United States, 252 F.2d 529 (2d Cir. 1958), a case with some similarities to the instant action. There a cargo of goods was removed by customs officials for inspection

1. The third-party Complaint filed by Akra Shipping Co. did not cite any jurisdictional basis for its action against the United States. However, it is apparent from the thrust of the third-party plaintiff's Brief and proposed Order that Akra conceives its cause of action as arising under the Tort Claims Act. Thus the jurisdictional issue raised by the instant Motion is confined to a consideration of whether the third-party plaintiff has a proper Tort Claims action against the government.

to the "Public Stores," from whence they disappeared; as the court said, "The manner in which they have vanished remains a mystery." The insurer of the goods brought an action against the government for their value, asserting a cause of action under the Tort Claims Act for the negligent loss of the goods.[2] As the Alliance case apparently expresses a novel view of § 2680(c), the Second Circuit's entire discussion of the Tort Claims theory is set out below:

"The action is also properly brought under the Federal Tort Claims Act. The government strongly urges that the exception to that Act found in 28 U.S.C.A. § 2680(c) bars such a claim and contends that a 'detention' as used therein encompasses not only a refusal to deliver goods admittedly in the possession of customs authorities but a loss of goods formerly in their possession. Here the goods had disappeared and a search of the eight divisions of Public Stores revealed that they were no longer in the possession of the customs authorities. In theory, at least, in order to detain, one must possess something to detain. The probable purpose of the exception was to prohibit actions for conversion arising from a denial by the customs authorities or other law enforcement agencies of another's immediate right of dominion or control over goods in the possession of the authorities. An examination of the cases in which the exception was asserted reveals that it is normally used to bar actions based upon the illegal seizure of goods. See, e. g., Jones v. Federal Bureau of Investigation, D.C., 139 F.Supp. 38, 39; United States v. One 1951 Cadillac Coupe De Ville, D.C., 125 F.Supp. 661. That the exception does not and was not intended to bar actions based on the negligent destruction, injury or loss of goods in the possession or control of the customs authorities is best illustrated by the fact that the exception immediately preceding it expressly bars actions 'arising out of the loss, miscarriage, or negligent transmission' of mail. 28 U.S.C.A. § 2680(b). If Congress had similarly wished to bar actions based on the negligent loss of goods which governmental agencies other than the postal system undertook to handle, the exception in 28 U.S.C.A. § 2680(b) shows that it would have been equal to the task. The conclusion is inescapable that it did not choose to bestow upon all such agencies general absolution from carelessness in handling property belonging to others. Nakasheff v. Continental Ins. Co., D.C., 89 F.Supp. 87, reaching a contrary result, was based in large measure on regulations of the Bureau of Customs but such regulations cannot override the clear wording of the statute." 252 F.2d at 533–534.

Likewise, third-party plaintiff urges here that as "negligent" is expressly stated in § 2680(b), so that negligent postal employees are exempt from suit for mishandling of postal matter, thus the word's omission from § 2680(c) must mean that Congress did not intend to protect customs officers from the negligent handling of goods.

The court cannot accept this theory. First of all, the *Alliance* case appears to stand alone in its holding that § 2680(c) does not insulate law enforcement and customs officers for liability in the detention of goods. As far as the court has been able to determine from it research, all other cases considering this particular exception to the Tort Claims Act have found it sufficient to bar similar actions. Recent cases in which the courts have upheld the immunizing nature of § 2680(c) include Bambulas v. United States, 323 F.Supp. 1271 (D.S.

---

**2.** The plaintiff in *Alliance* also alleged a cause of action under the Tucker Act, 28 U.S.C. § 1346(a)(2), for breach of an implied contract of bailment. The Second Circuit held that the action was properly brought under the Tucker Act. The plaintiff here makes no reference to that act, apparently willing for its cause to stand or fall on the Tort Claims theory.

D.1971), where the court ruled it had no jurisdiction under the Tort Claims Act in an action for the return of firearms alleged to have been illegally seized, and Newstead v. United States, 258 F.Supp. 250 (E.D.Mo.1966), a replevin action to recover a firearm allegedly illegally seized by treasury agents, which was dismissed for lack of jurisdiction. Though the Second Circuit in *Alliance* noted that the statute "is normally used to bar actions based upon the illegal seizure of goods," as was the case in *Bambulas* and *Newstead, supra,* there is nothing in the language of the statute to indicate that erroneous seizure in the inception should be distinguished from improper retention or negligent handling of goods properly seized at the outset. Rather, the statute specifically bars "any claim" arising out of the detention of goods.

A case which is particularly damaging to the third-party plaintiff's position is United States v. 1500 Cases, 249 F.2d 382 (7th Cir. 1957), decided some three months before *Alliance* and reaching an opposite result. In this case the claimant, the canner of the quantity of tomato paste in dispute, won an award in the district court for the pre-seizure charges arising from the unloading of the cartons of tomato paste and the moving of them to a place of storage in a terminal warehouse. The district court found that such removal and storage resulted from a Food and Drug Administration employee's direction to the warehouse personnel not to release the goods because they had been recommended for seizure. The trial court ruled that the storage, handling and other charges made by the warehouse prior to the seizure would not have occurred but for the action taken by the FDA employee, and thus awarded the claimant damages for such costs. On appeal, the claimant sought to uphold the district court decision on the basis that the award was for "probable legal damages which claimant suffered because of the com-

mission of a wrongful act by an employee of the Government while acting within the scope of his office and employment." The claimant specifically invoked the jurisdiction of the Tort Claims Act. The Seventh Circuit reversed, holding that "the District Court was entirely without authority to assess damages against the United States," and particularly relying on § 2680(c) as barring the claimant's suit. Thus in *1500 Cases* the Seventh Circuit held that the statutory exception prevented a suit premised on an FDA agent's negligence in causing the storage of the merchandise. The case is indistinguishable on the facts from the case at bar.

This court has had recent occasion to consider the effect of § 2680(c) in a similar context. In States Marine Lines, Inc. v. Shultz, 359 F.Supp. 512 (D.S.C. 1973), plaintiff sought resulting and consequential damages flowing from the alleged wrongful seizure and detention of its merchandise by customs agents. Finding that the suit was in reality one against the United States, the court held that § 2680 effectively foreclosed any reliance by the plaintiff on the Tort Claims Act for a jurisdictional basis. The third-party plaintiff would distinguish that case from the present factual situation, arguing that in *States Marine* the customs officials merely detained the goods, whereas here they have taken overt acts to damage the detained goods. But the distinction is artificial, for the claimants in each case sought damages for the same end result—the alleged unlawful deprivation of their property. Goods are equally unavailable to a claimant if they are padlocked in a customs house, or if they are physically destroyed.

Thus it appears to the satisfaction of the court that *Alliance* is an anomaly in the case law construing § 2680(c), with the great weight of the law being contrary to the position taken by the Second Circuit there.[3] The third-party

3. The government argues that even if the court were to accept the principle established in *Alliance,* the present case would be dis-

tinguishable on its facts. In *Alliance,* the third-party defendant contends, the goods disappeared during the government's inspection

plaintiff has directed the court to no other cases following *Alliance* on this particular point, and the court's own research has uncovered none.[4]

For the reasons stated above, the third party defendant's Motion to Dismiss should be granted. And in accordance with the stipulation of the third-party plaintiff's counsel, the defendant Ducharme is also dismissed as a third-party defendant.

And it is so ordered.

process, whereas here the goods were never lost, but were lawfully detained for the protection of public health and were eventually destroyed. This distinction is no different from that offered by the third-party plaintiff as to the *States Marine* case. Again, the end result both here and in *Alliance* is that the claimants were deprived of their property while it was under customs' control. Were *Alliance* of *stare decisis* effect on this court, the factual differences in the cases would not cause a different result. However, *Alliance* is of course not controlling here, and for the reasons stated this court finds it unpersuasive.

4. Akra cites United States v. Love, 324 F. Supp. 1038 (E.D.Mich.1971), Marine Insurance Co. v. United States, 187 Ct.Cl. 621, 410 F.2d 764 (1969), and Jaeger v. United States, 129 U.S.App.D.C. 319, 394 F.2d 994 (D.C.Cir. 1965), all of which make reference to *Alliance*. However, none of them follow that case to the extent that the exception contained in § 2680(c) is found not to apply to the negligent loss of goods.