**A & D INTERNATIONAL, INC., a Florida Corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America and M & H Brokerage, Inc., Defendants-Appellees.**

No. 80–5196.

United States Court of Appeals, Fifth Circuit.* Unit B

Jan. 11, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Cohen & Kokus, Linda Koenigsberg, Horton, Perse & Ginsberg, Arnold R. Ginsberg, Miami, Fla., for plaintiff-appellant.

Robert I. Targ, Asst. U. S. Atty., Miami, Fla., for the U. S.

Before MILLER [**], Judge, and FRANK M. JOHNSON, JR. and THOMAS A. CLARK, Circuit Judges.

[**] The Honorable Jack R. Miller, Judge for the United States Court of Customs and Patent Appeals, sitting by designation.

**THOMAS A. CLARK, Circuit Judge:**

Appellant seeks reversal of the district court's judgment for the defendants. Plaintiff claimed the loss of certain valuable gems taken into custody by the United States Customs Service in Miami, Florida due to the negligence of that department or of defendant M & H Brokerage, Inc. The gems were submitted to Customs pursuant to a customs declaration by one of plaintiff's agents and later transferred to the brokerage firm for appraisal. We affirm the district court's determination that neither defendant was negligent.

### Facts

Plaintiff and defendant M & H Brokerage, Inc. are both Florida corporations with their principal places of business in that state. As to the United States as a defendant, this is an action for damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671. As to defendant M & H Brokerage, Inc., this is an action for damages over which the district court had pendent jurisdiction provided, of course, the court had jurisdiction over the Federal Tort Claims Act claim.

On February 16, 1976, Asghar Djahanbakhch, the president and an agent of the plaintiff, arrived at the Miami International Airport from Brazil. At the United States Customs Enclosure he submitted his customs declaration and a briefcase allegedly containing a consignment of gems to United States Customs Inspector A. C. Godsey. He informed the agent, both orally and in writing, that he was carrying a briefcase containing 39 packets of gemstones. 19 U.S.C. § 1484 and 19 C.F.R. 141 require the declaration of the stones. He requested the United States Customs agent to retain the briefcase until he could arrange for a customs broker to pick it up, that the contents of the briefcase be inventoried, and that the briefcase be sealed in his presence. The case contents were not inventoried and the case not sealed at that time. Inspector Godsey gave Djahanbakhch a written re-

ceipt entitled "Receipt for Merchandise Retained in Customs Custody" whereupon it was indicated "Customer requests sealing before sending for appraisal."

It is undisputed before this court that the action of the inspectors was contrary to the internal operating procedures set forth in the District Circular dated July 1, 1971 and the United States Customs Inspector's Manual §§ 3.53 and 3.54, documents intended to provide guidance to United States Customs Inspectors in the performance of their duties.

Immediately after receiving the briefcase, Inspector Godsey requested Senior Inspector Krasno to accompany him to the bond room with the unopened briefcase. Once in the room, the inspectors sealed the briefcase with a string and button seal and made an entry in the bond room log book. Inspector Godsey then had Supervisory Customs Inspector Basile place the briefcase inside the customs safe.

Plaintiff contacted his independent customs broker, defendant M & H Brokerage, Inc., and provided it with the Receipt for Merchandise for the briefcase so that an employee could be dispatched to the customs enclosure to pick up the briefcase and bring it to the United States Customs District Office where it would be appraised by a customs import specialist. On February 18, Mr. Rodriguez, an employee of defendant M & H Brokerage, Inc., appeared at the customs enclosure at Miami International Airport and produced the receipt and entry documentation in regard to the briefcase. Custom Inspector Roy Wyett, upon ascertaining that the documents were proper in all respects, sought out Supervisory Customs Inspector Korzeniowski to open the safe in the bond room. The safe was opened and the briefcase removed. Inspectors Wyett and Korzeniowski signed the log book to reflect the briefcase was being released from Customs custody to Mr. Rodriguez at approximately 1:30 p. m. on February 18, 1976. The trial court found that neither Inspectors Godsey, Basile, Wyett, nor Korzeniowski ever removed the seal from the briefcase or opened the briefcase during the time it was in Customs custody.

From the time the briefcase was taken from the airport by M & H Brokerage, Inc., it was constantly in the possession of that company. It was handled with normal care as is customary in the business of customs house brokerage firms. The only occasion the briefcase was out of sight of the delivery person was on a brief occasion when he stopped at a streetside Cuban coffee shop with his van parked immediately opposite the coffee shop at the sidewalk, with the briefcase in the unlocked van, but with entrance to the van within his sight.

On February 18, 1976 at 3:30 p. m., while on duty at the United States Customs Miami District Office, Import Specialist Carroll E. Ogburn received from Pedro Rodriguez the sealed briefcase and accompanying documentation which indicated it contained gemstones. Shortly thereafter at the close of business, Specialist Ogburn placed the sealed briefcase in the office safe. On February 19, 1976, the following day, upon arriving at the office Specialist Ogburn opened the safe and removed the sealed briefcase for the purpose of appraising its contents. He cut the seal, compared the contents of the briefcase with the invoice submitted by the plaintiff through M & H Brokerage, Inc., and discovered that five packets of gemstones listed on the invoice were missing. These packets comprised approximately one-half the total invoice value.

### Action in the District Court

The district court judge concluded that the failure of the United States Customs Service to seal the plaintiff's briefcase in the immediate presence of the plaintiff's representative as required by the guidelines set out in the District Circular and the United States Customs Inspector's Manual did not constitute negligence. He concluded that the failure of the United States Customs Service to inventory the contents of plaintiff's briefcase as required by the same circular and manual also did not constitute negligence. He concluded that M & H Brokerage and its personnel did not act with any negligence in caring for or han-

dling plaintiff's briefcase. In short, he determined that the plaintiff failed to meet its burden to show by a preponderance of the evidence that the alleged negligence of either of the defendants was the proximate cause of the alleged damages suffered by plaintiff.

## Jurisdiction

Appellees allege that the district court lacked subject matter jurisdiction below. Although the appellees have not cross-appealed, subject matter jurisdiction may be questioned at any time and may be raised by the appellate court itself. This action was brought under the Federal Tort Claims Act. 28 U.S.C. § 2680 provides for exceptions to the general waiver of sovereign immunity provided for in the Federal Tort Claims Act.

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
> (c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of Customs or excise of any other law enforcement officer.

As the United States Supreme Court has recently noted, there is a conflict in the circuits as to the meaning of § 2680(c).[1] Some courts have held that the section is limited to wrongful detentions and does not deal with losses.[2] Other courts have construed § 2680(c) to except such losses from the Tort Claims Act.[3] The leading case for distinguishing between losses and wrongful detentions is *Alliance Assurance Company v. United States,* 252 F.2d 529 (2nd Cir. 1958).[4]

> The probable purpose of the exception was to prohibit actions for conversion arising from a denial by the customs authorities or other law enforcement agencies of another's immediate right of dominion or control over goods in the possession of the authorities. An examination of the cases in which the exception was asserted reveals that it is normally used to bar actions based upon the illegal seizure of goods. *See, e.g., Jones v. Federal Bureau of Investigation, D. C.,* 139 F.Supp. 38, 39; *United States v. One 1951 Cadillac Coupe De Ville, D.C.,* 125 F.Supp. 661. That exception does not and was not intended to bar actions based on the negligent destruction, injury or loss of goods in the possession or control of the customs authorities is best illustrated by the fact that the exception immediately preceding it expressly bars actions "arising out of the loss, miscarriage, or negligent transmission" of mail. 28 U.S.C.A. § 2680(b). If Congress had similarly wished to bar actions based on the negligent loss of goods which governmental agencies other than the postal system undertook to handle, the exception in 28 U.S.C.A. § 2680(b) shows that it would have been equal to the task. The conclusion is inescapable that it did not choose to bestow upon all such agencies general absolution from carelessness in handling property belonging to others.

*Id.* at 534. We find this rationale persuasive.

This court has dealt with the exception rarely. Only one case is cited to this court by the parties and research has revealed no other. The discussion of § 2680 in that case is minimal.

Finally, appellant alleges the trial court erred in denying his counterclaim for damage to the boat and loss of service while it was in storage. 28 U.S.C. § 2680

---

1. *Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 462 n.3, 100 S.Ct. 647, 649 n.3, 62 L.Ed.2d 614 (1981).

2. The Supreme Court lists *United States v. One (1) 1972 Wood, 19 Foot Custom Boat FL8443AY,* 501 F.2d 1327 (5th Cir. 1974) as one case which construes § 2680(c) as excepting *losses* from the Tort Claims Act. As discussed later in this opinion, that case involved the *detention* of property. We note no Fifth Circuit or Eleventh Circuit precedent which binds us to except losses from the Federal Tort Claims Act.

3. *See, e.g., Schonfeld Company v. SS Arka Tenaronn,* 363 F.Supp. 1220 (S.C.1973).

4. *See also A-Mark, Inc. v. United States Secret Service,* 593 F.2d 849 (9th Cir. 1978).

specifically prohibits the bringing of any claim arising from the detention of any goods or merchandise by a customs officer.

*United States v. One (1) 1972 Wood 19 Foot Custom Boat*, 501 F.2d 1327, 1330 (5th Cir. 1974). A boat and trailer had been seized when it was used to transport marijuana. The owner was not involved in the marijuana importation. The Customs Service agreed to return the boat to its owner upon the payment of storage charges that were approximately $400. The owner refused to pay and forfeiture proceedings were instituted. In essence then, the owner in that case was challenging the propriety of the storage charges as applied to him, an innocent party. This is clearly the type of suit which is excepted by 28 U.S.C. § 2680(c). It involves a claim arising from "the detention of goods...."

■ On the other hand in the case before the court, plaintiff below was alleging carelessness in the handling of his property. Such an action is not excepted from the provisions of the Federal Tort Claims Act. The district court had jurisdiction.

### A Case of Negligent Tort or Contract Bailment—A Distinction Without a Difference?

Both the appellant and the appellees center their arguments on the Florida law concerning bailments. Appellant argues that because the existence of a bailment and the loss of the goods while in the possession of the bailee was proven, the duty should shift to the bailee to go forward with evidence and show that it exercised ordinary care.

In deciding a Federal Tort Claims Act case, the federal courts rely upon the law of the state in which the tort occurred, here Florida. The appellant relies upon *International Gem Stones, Inc. v. Harper-Robinson & Co.*, 299 So.2d 160 (Fla. 3rd D.C.A. 1974), which opinion contains the following quotation from a preceding Florida case:

> The instant bailment was a bailment for the mutual benefit of both bailor and bailee. In the absence of an agreement to the contrary, the bailee is held to the standard of ordinary care and is liable for ordinary negligence.

The plaintiff proved the bailment and *loss of the chattel while in possession of the bailee.* In so doing the subrogee of the bailor made a prima facie case as to the bailment. The duty then devolved upon the bailee to go forward with the evidence and show that it exercised ordinary care. *Harbor One, Inc. v. Preston*, Fla.App. 1965, 172 So.2d 478; *Porter v. Izlar Motor Co.*, 134 Fla. 798, 184 So. 329.

*ITT Consumer Services Corp. v. Travelers Indemnity Co.*, 256 So.2d 74, 75 (Fla. 3rd D.C.A. 1971) (emphasis added).

Although we doubt seriously that bailment law governs this transaction, we need not decide whether it does because the existence of a bailment was not proven below. At most, the plaintiff shows that the gems were lost while in the possession of one of the two defendants. Such a factual situation does not create a true bailment. Also, to trigger a bailment analysis, it would have been necessary for the district court to specifically find that 39 packets of jewels were delivered by plaintiff to defendants. The district court did not so find.

Instead, the district judge, utilizing tort analysis, concluded that there was no negligence either in the failure of the United States Customs Service to seal the plaintiff's briefcase in the presence of plaintiff's representative or in the failure to inventory the contents of the plaintiff's briefcase upon arrival at the customs enclosure.

Even if the existence of a bailment had been proven, the only benefit which plaintiff would derive would be to shift a burden to the defendant. Appellant acknowledges that only the burden of *going forward* with the evidence is shifted. The trial judge concluded that the plaintiff had failed to meet its *ultimate* burden of *proof.* There is no indication that the trial judge did not look to the defendants for proof of the reasonableness of their activities. In fact, defendants presented extensive testimony and evidence on the reasonableness of their conduct.

Although this case lends itself to bailment analogies, undue reliance on bailment law can lead to confusion. We note initially that an action based on bailment sounds in contract rather than tort and may be a subject more appropriate for the Tucker Act (28 U.S.C. § 1346) than the Federal Tort Claims Act.[5] The opinion upon which appellant relies most heavily for its bailment analysis, *Alliance*, addresses claims under both the Federal Tort Claims Act and the Tucker Act. The claim for a breach of implied contract of bailment was brought under the Tucker Act in that case. The Federal Tort Claims Act covered only the negligence claim. We need not address the issues raised, but not briefed, by the failure to proceed below under the Tucker Act. Plaintiff did not prove the existence of a bailment and negligence analysis fits comfortably within the Federal Tort Claims Act and provides a proper disposition of this case.

In order to prevail on a negligence claim, the plaintiff must establish the breach of a duty. The government, in the form of the Customs Service, has the duty to act with reasonable care toward property in its possession. When a citizen establishes the delivery to the government of an article and the failure of the government to return the item, something real happens in a trial. One might say the burden shifts, or that an inference of negligence can be drawn, or simply that plaintiff has a good case, so far. Realistically in that situation, the government must act or run the risk of defeat. The best counterattack would, of course, be to present an inventory establishing the non-receipt of the goods. The government hurt itself in this case by not having taken such a step. The inventory is important— not that its absence is evidence of negligence, for it is not, but that its use precludes questions of delivery. We note that even had the taking of an inventory been required by *statute*, the case would not necessarily have been decided by the government's failure to take one. A real question of proximate cause would arise.

 Because the government could not establish non-delivery with an inventory, it was required to establish the reasonableness of its actions. It presented evidence concerning its handling of the briefcase. It was sealed, locked in a safe with more than one agent present, and removed in a similar manner, etc. Similarly, the brokerage firm presented evidence concerning the care it took. This evidence was considered by the trial judge. The questions of negligence are uniquely for the fact finders. We cannot say that the findings of fact upon which the district judge based his conclusions are clearly erroneous.

The opinion of the district court is

AFFIRMED.

---

5. *Jaeger v. United States*, 394 F.2d 944 (D.C. Cir. 1968).

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.