**KOSAK, Joseph A., Appellant,**

v.

**UNITED STATES of America.**

**No. 81–2855.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) April 27, 1982.

Decided May 19, 1982.

Rehearing Denied June 24, 1982.

Charles S. Silver, Jeffrey L. Naftulin & Associates, Doylestown, Pa., for appellant.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Serena H. Dobson, Asst. U. S. Attys., Philadelphia, Pa., Allan L. Martin, U. S. Customs Service, Baltimore, Md., for appellee.

Before ALDISERT, WEIS, and BECKER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question presented by this appeal is whether the provision of the Federal Tort Claims Act (FTCA) that bars claims "arising in respect of . . . the detention of any goods or merchandise by any officer of customs . . .," 28 U.S.C. § 2680(c), precludes a claim against the United States for negligent damage to property while in the legitimate custody of the Customs Service. We conclude that it does and therefore affirm the judgment of the district court that dismissed appellant's complaint.

## I.

On February 28, 1978, Customs Service agents seized certain antiques and objects of art from the home of Joseph Kosak. He was subsequently charged with smuggling goods into the United States in violation of 18 U.S.C. § 545, but was found not guilty. The Customs Service returned the detained property to him but Kosak contended that certain items had been damaged as a result of Customs Service negligence during the detention. Alleging jurisdiction under 28 U.S.C. § 1346(b),[1] he brought this FTCA action in district court seeking $12,310 in damages. The Government responded that Kosak's claim was barred because it fell under 28 U.S.C. § 2680(c). The district court dismissed the complaint.[2]

Section 2680 enumerates several exceptions to the FTCA's general relaxation of tort immunity. Section 2680(c) specifies:

1. 28 U.S.C. § 1346(b), the jurisdictional section of the Federal Tort Claims Act, states:
   [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ..., for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

2. The district court did not specify the actual ground for dismissal—whether lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), or failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). Of itself this ambiguity will not cause us to set aside the district court's order. In light of the bar created by § 2680(c), no set of facts will support the plaintiff's claim. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

3. The Supreme Court was presented with an argument similar to Kosak's in *Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980) (per curiam). Although the Court summarized the conflicting interpretations of § 2680(c), it expressly declined to resolve the conflict. *Id.* at 462 n.3, 100 S.Ct. at 649 n.3.
   *A-Mark, Inc. v. United States Secret Service*, 593 F.2d 849, 850 (9th Cir. 1978) (per curiam), is in accord with *Alliance* in that § 2680(c)

The provisions of this chapter [Tort Claims Procedure] and section 1346(b) of this title shall not apply to—

....

(c) Any claim arising in respect of ... the detention of any goods or merchandise by any officer of customs....

Finding no decision of this court interpreting this section of the FTCA, appellant invites us to adopt the interpretation of the Second Circuit, as announced in *Alliance Assurance Co. v. United States*, 252 F.2d 529 (2d Cir. 1958), which held that § 2680(c) applies only to claims based on injury caused by detention itself and not to losses caused by the Customs Service's negligent handling of goods during detention.

## II.

The courts are divided in their interpretations of this section.[3] The divergence stems "reaches only those claims asserting injury as a result of the fact of detention itself where the propriety of the detention is at issue, and does not reach claims where the injury is asserted to result from negligent handling of property in the course of detention." *See also A & D International, Inc. v. United States*, 665 F.2d 669 (5th Cir. 1982) (accepting the *Alliance* distinction between losses and wrongful detention).

In contrast, the court in *United States v. One (1) 1972 Wood, 19 Foot Custom Boat, FL 8443AY*, 501 F.2d 1327, 1330 (5th Cir. 1974) (per curiam), observing that "28 U.S.C. § 2680 specifically prohibits the bringing of any claim arising from the detention of any goods or merchandise by a customs officer," affirmed the denial of a counterclaim for damage to a boat and the loss of its service. The Supreme Court in *Hatzlachh* appropriately identified this Fifth Circuit decision as one in conflict with *Alliance*. 444 U.S. at 462 n.3, 100 S.Ct. at 649 n.3. Nevertheless, the court in *A & D International* took issue with the Supreme Court's categorization, and declared that because the earlier decision dealt with a challenge to the propriety of the Custom Service's storage charges, it involved only detention of property. 665 F.2d at 672–73 & n.2. This explanation appears to us to be based upon a misreading of the earlier decision, for it is clear that the owner of the boat counterclaimed for damage to his property while it was in storage.

*See also S. Schonfeld Co. v. SS Akra Tenaron*, 363 F.Supp. 1220, 1223 (D.S.C.1973) ("There is nothing in the language of the statute to indicate that erroneous seizure in the

from the phrase "arising in respect of . . . the detention of any goods . . . ." The *Alliance* court speculated that the

> probable purpose of the exception was to prohibit actions for conversion arising from a denial by the customs authorities . . . of another's immediate right of dominion or control over goods in the possession of the authorities. . . . [and not] to bar actions based on the negligent destruction, injury or loss of goods in the possession or control of the customs authorities. . . .

252 F.2d at 534. Comparing 28 U.S.C. § 2680(b)'s explicit preclusion of actions against the postal system "arising out of the loss, miscarriage, or negligent transmission" of mail, the *Alliance* court reasoned that if Congress had intended to bar actions claiming negligence of the customs officials, it would have done so in like manner. We disagree.

*Alliance's* rationale ignores the clear language of § 2680(c), the legislative intent, and specific teachings of the Supreme Court regarding interpretation of exceptions to the FTCA. Statutory interpretation begins with the language of the statute itself.

As in all cases involving statutory construction, "our starting point must be the language employed by Congress," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979), and we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962). Thus "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Con-*

---

inception should be distinguished from improper retention or negligent handling of goods properly seized at the outset.").

**4.** The court's function in interpretation of statutes is also defined in *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981):

> When we find the terms of a statute unambiguous, judicial inquiry is complete, except "in 'rare and exceptional circumstances.' " *TVA v. Hill*, 437 U.S. 153, 187, n.33 [98 S.Ct.

---

*sumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

*American Tobacco Co. v. Patterson,* —— U.S. ——, ——, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982).[4] In our view, the language of the statute covers all claims arising out of detention of goods by customs officers and does not purport to distinguish among types of harm.

Moreover, the legislative history of § 2680(c) reveals no "clearly expressed legislative intention" contrary to the ordinary meaning of the section's language. The section-by-section analysis contained in the committee report on the bill provides only a brief statement that the group of exceptions that includes the exception for claims arising out of the detention of goods by customs officers covers "claims which relate to certain governmental activities which should be free from the threat of damage suit, or for which adequate remedies are already available." S.Rep.No. 1400, 79th Cong., 2d Sess. 33 (1946). There is nothing in the legislative history to show that this exemption was to be restricted to claims in conversion.

Our examination of the purposes of the statutory schema reinforces our view. In *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Court makes clear that sovereign immunity is the rule, and that legislative departures from the rule must be strictly construed. The Court observed that the FTCA was an example of the step-by-step legislative relaxation of sovereign immunity and teaches that in interpreting these statutory modifications and their exceptions,

---

2279, 2298, n.33, 57 L.Ed.2d 117] (1978) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 [51 S.Ct. 49, 50, 75 L.Ed. 156] (1930)). Accord, *Aaron v. SEC*, 446 U.S. 680, 695 [100 S.Ct. 1945, 1955, 64 L.Ed.2d 611] (1980); *Ernst v. Ernst v. Hochfelder*, [425 U.S. 185, 214 n.33, 96 S.Ct. 1375, 1391 n.33, 47 L.Ed.2d 668 (1976)]. No such circumstances are present here, for our reading of the statute is wholly consistent with the history and the purposes of the Securities Act of 1933.

courts include only those circumstances which are within the words and reason of the exception. They cannot do less since petitioners obtain their "right to sue from Congress [and they] necessarily must take [that right] subject to such restrictions as have been imposed." *Federal Housing Administration v. Burr*, 309 U.S. 242, 251, 60 S.Ct. 488, 493, 84 L.Ed. 724.

So, our decisions have interpreted the Act to require clear relinquishment of sovereign immunity to give jurisdiction for tort actions.

346 U.S. at 31, 73 S.Ct. at 965 (footnotes omitted). Exceptions to the government's relaxation of immunity "are not to be nullified through judicial interpretation, since Congress clearly delineated the areas in which it did not intend to forfeit its immunity from suit." *Builders Corp. of America v. United States*, 320 F.2d 425, 426 (9th Cir. 1963), *cert. denied*, 376 U.S. 906, 84 S.Ct. 660, 11 L.Ed.2d 606 (1964).

Reading § 2680(c) in this light, we find no "clear relinquishment of sovereign immunity."

In cases of statutory construction, this Court's authority is limited. If the statutory language and legislative intent are plain, the judicial inquiry is at an end. Under our jurisprudence, it is presumed that ill-considered or unwise legislation will be corrected through the democratic process; a court is not permitted to distort a statute's meaning in order to make it conform with the Justices' own views of sound social policy. See *TVA v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

*Industrial Union Department v. American Petroleum Institute*, 448 U.S. 607, 688, 100 S.Ct. 2844, 2887, 65 L.Ed.2d 1010 (1980) (Marshall, J., dissenting). Appellant's claim arises from detention of goods by a customs officer, and therefore, whether it arises in negligence or in conversion, it is barred by § 2680(c).

### III.

The judgment of the district court will be affirmed.

WEIS, Circuit Judge, dissenting.

The interpretation of § 2680(c) adopted by the majority in this case produces anomalous results. If a traveller handed an expensive oriental vase to a customs officer for inspection at a port of entry, and the officer carelessly dropped the vase, damages would be payable under the Federal Tort Claims Act. Under the court's holding today, however, that same individual would be without an FTCA remedy if the officer dropped the vase during a period of detention. I do not believe that the statutory language shows that Congress intended to bring about such inconsistent results by giving the Customs Service a license to harm property while it is being detained. Plaintiff had as much right to expect that the government would return his possessions intact, or else respond in damages, as any other person who is forced to temporarily relinquish his property to the government.

The Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*, was Congress' response to complaints that sovereign immunity worked an injustice on citizens who had suffered personal injury or property damage through the negligence of government employees. In general, the statute waives sovereign immunity so that the government is liable in circumstances where private persons would be responsible for damages in tort. 28 U.S.C. § 2674. Even under the *general* rule that a waiver of sovereign immunity must be narrowly construed, the loss at issue here is plainly the type that Congress intended the government to recompense.

If the provisions of the statute stopped at that point, there is no question that the plaintiff would be entitled to recover on proof that his property was carelessly damaged by customs employees. But after providing a waiver of sovereign immunity, the FTCA goes on to list a number of exceptions, much like an insurance policy which initially grants coverage in broad terms and then refines it by a series of exclusions.

The purpose of strictly construing the waiver of sovereign immunity is served once the outer limits of the government's

liability are demarcated. Thereafter, the specific exceptions that Congress listed should not be interpreted expansively against the citizen to defeat the general waiver, but rather should be limited to their terms. As the Supreme Court said in *Dalehite v. United States*, 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953):

> "Of course, these modifications are entitled to a construction that will accomplish their aim, that is, one that will carry out the legislative purpose of allowing suits against the Government for negligence with due regard for the statutory exceptions to that policy. In interpreting the exceptions to the generality of the grant, courts include only those circumstances which are within the words and reason of the exception."

It is important, therefore, to look to the language and logic of the exception in 28 U.S.C. § 2680(c). By its terms, it excludes any claim "arising in respect of . . . the detention of any goods. . . ." Webster's Third International New Dictionary 1934 (1968) defines "in respect of" to mean "as to: as regards: insofar as concerns: with respect to." These definitions indicate that the statutory exception is directed to the fact of detention itself, and that alone. The language is not broad enough to exempt a claim for damage occurring "during" detention. In reaching the contrary conclusion, the district court reviewing § 2680(c) in *S. Schonfeld Co. v. SS Akra Tenaron*, 363 F.Supp. 1220, 1223 (D.S.C. 1973), said that "the statute specifically bars 'any claim' arising out of the detention of goods." As noted, however, the statutory language is "in respect of," not "arising out of"—a subtle but nevertheless significant distinction.

Further support for my interpretation of § 2680(c) is provided by *Alliance Assurance Co. v. United States*, 252 F.2d 529 (2d Cir. 1958), in which the Second Circuit held that Congress did not intend the statutory exception to bar actions based on the negligent destruction, injury or loss of goods in the possession of the customs authorities. Observing that § 2680(b) expressly bars ac-

tions "arising out of the loss, miscarriage, or negligent transmission" of mail, the court reasoned:

> "If Congress had similarly wished to bar actions based on the negligent loss of goods which governmental agencies other than the postal system undertook to handle, the exception in 28 U.S.C.A. § 2680(b) shows that it would have been equal to the task. The conclusion is inescapable that it did not choose to bestow upon all such agencies general absolution from carelessness in handling property belonging to others."

*Id.* at 534. In *A-Mark, Inc. v. United States Secret Service*, 593 F.2d 849 (9th Cir. 1978), the Ninth Circuit also applied this reasoning to a factual situation similar to the one at hand, and held that § 2680(c) did not bar recovery for damages to an article incurred during detention.

By contrast, neither of the appellate decisions that have denied recovery for damages analyzed the language or policy of § 2680(c) before coming to their conclusion. *See United States v. One (1) Douglas A–26B Aircraft*, 662 F.2d 1372 (11th Cir. 1981); *United States v. One (1) 1972 Wood, 19 Foot Custom Boat*, 501 F.2d 1327 (5th Cir. 1974). It is also noteworthy that even though *Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980), did not resolve the conflict between the circuits, the Supreme Court did reverse the decision of the Court of Claims which had relied in part upon an expansive interpretation of § 2680(c) that would bar recovery for damage to detained goods.

In summary, I am persuaded that the interpretation placed upon § 2680(c) by the Second and Ninth Circuits is correct. The United States had a legal right to detain the plaintiff's property without liability for the damages which might be caused by the denial of possession. However, the government is not immune from liability for the harm it did to the property while it was being detained. I would reverse the judgment of the district court.