**Dekalu Add RUFU, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. CV–93–0106.

United States District Court, E.D. New York.

Dec. 5, 1994.

Dekalu Add Rufu, Pro Se.

Charles S. Kelinberg, Asst. U.S. Atty., Brooklyn, NY, for respondent.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss petitioner's claim for money damages for lack of subject matter jurisdiction.

## BACKGROUND

Petitioner Dekalu Add Rufu was arrested at JFK International Airport and subsequently convicted of importing heroin into the country. At the time of Rufu's arrest, agents of the Drug Enforcement Administration ("DEA") seized from Rufu two pieces of luggage containing miscellaneous items of personal property. Rufu's post conviction motion for return of that property was denied by this court on June 22, 1993, based on the government's assertion that the property had been returned to Rufu's designated recipient.[1]

On March 28, 1994, the Court of Appeals reversed that decision holding that: (1) Rufu's motion for the return of his property should be treated as a civil complaint for equitable relief; (2) the fact that the government may have destroyed or otherwise disposed of the property sought by Rufu does not preclude the court from awarding damages in lieu of equitable relief; and (3) that at the very least the court was required to take evidence and make factual findings to determine whether the government, in fact, *did* return all of Rufu's property. The case was, accordingly, remanded for further proceedings. *Rufu v. United States,* 20 F.3d 63 (2d Cir.1994).

The government thereafter petitioned the Circuit Court for a rehearing, seeking clarification of its decision. The court was requested to make clear that if Rufu's property was lost, he could recover money damages from the government only if the government had waived its sovereign immunity from liability in such an action. The motion for a rehearing was denied.

In its Memorandum of Law in support of this motion ("G. Mem."), the government makes reference to Rufu's correspondence with the Court of Appeals in which he seeks money damages in addition to the return of his property which the government has either lost, destroyed, or otherwise disposed of.

---

1. In a letter dated June 22, 1993 the court was advised that on June 5, 1991, a money order for $262.50 was mailed to Rufu; that on October 2, 1991, two pieces of luggage which were de-scribed were sent to Rufu's designated recipient which a return receipt indicated were received; that in July, 1992 a watch, a yellow cross, and an empty wallet were returned to Rufu directly.

It is to Rufu's claim that he is entitled to money damages to which this motion to dismiss is addressed.

### DISCUSSION

The judicial backdrop for this motion and the proceedings preceding it, is, quite clearly, *Mora v. United States*, 955 F.2d 156 (2d Cir.1992). In that case, also one by a convicted drug offender for the return of property seized incident to his arrest, the court held that the claim should be treated as a "civil equitable proceeding" and "because the complaint requires equitable relief, the court has power to award damages incident to the complaint." 955 F.2d at 158, 159. The court also held that "the district court should have liberally construed Mora's petition as a complaint under the FTCA" and went on to state that 28 U.S.C. § 2680(c)[2] "does not apply where the goods are no longer in the possession of the government, and therefore cannot be regarded as being 'detained.' *See Alliance Assurance Co. v. United States*, 252 F.2d 529, 533–34 (2d Cir.1958)." 955 F.2d at 160.

*Alliance* was a suit brought to recover the value of goods which disappeared from the possession of United States Customs while being inspected for entry into the country. Two causes of action were alleged, one under the Tucker Act, 28 U.S.C. § 1346(a)(2), for breach of an implied contract of bailment, and the other for negligent loss of goods under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). The government moved to dismiss both causes of action on the ground that subject matter jurisdiction was absent. The district court granted the motion as to the Tucker Act claim and denied it as to the FTCA claim. The government's motion addressed to the FTCA claim was that it was barred by 28 U.S.C. § 2680(c). In rejecting the government's motion, the court held at page 534 that:

> In theory, at least, in order to detain, one must possess something to detain. The probable purpose of the exception was to prohibit actions for conversion arising from

a denial by the customs authorities *or other law enforcement agencies* of another's immediate right of dominion or control over goods in the possession of the authorities. An examination of the cases in which the exception was asserted reveals that it is normally used to bar actions based upon the illegal seizure of goods. (Citations omitted). That the exception does not and was not intended to bar actions based on the negligent destruction, injury or loss of goods in the possession or control of the customs authorities is best illustrated by the fact that the exception immediately preceding it expressly bars actions "arising out of the loss, miscarriage, or negligent transmission of mail." 28 U.S.C.A. § 2680(b). If Congress had similarly wished to bar actions based on the negligent loss of goods which governmental agencies other than the postal system undertook to handle, the exception in 28 U.S.C.A. § 2680(b) shows that it would have been equal to the task. The conclusion is inescapable that it did not choose to bestow upon all such agencies general absolution from carelessness in handling property belonging to others. (Emphasis added).

*Mora* and *Alliance* pose two issues for determination in the disposition of this motion. First, is the conclusion reached in *Alliance*, namely, that 28 U.S.C. § 2680(c) is not applicable, truly inescapable? Second, if that conclusion *is* escapable and the government has preserved its sovereign immunity by § 2680(c), is that immunity vulnerable to a claim for equitable relief?

As to the first issue, the Supreme Court, twenty-six years after *Alliance*, in *Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), held that the Circuit Court's reading of § 2680(c) was too narrow.

*Kosak* brought oriental art into the United States from Guam which he represented to the United States Customs Service ("Customs") he intended to keep for himself. Acting upon information that he intended to sell

---

**2.** That statute provides, in relevant part:
Any claim arising in respect of ... the detention of any goods or merchandise by any offi-

cer of customs or excise or any other law enforcement officer.

the art, Customs obtained a warrant to search his home and seized miscellaneous antiques and other art objects charging him with a violation of 18 U.S.C. § 545.[3] Kosak was acquitted after a jury trial and his goods were eventually returned to him. Kosak then brought this action under the FTCA seeking damages for alleged injury to his property. The government moved to dismiss the complaint or for summary judgment on the ground that the claim was barred by § 2680(c). The district court granted the motion and the Court of Appeals affirmed. 679 F.2d 306 (3rd Cir.1982). Certiorari was granted to resolve a conflict in the circuits on this issue.

■ The government's waiver of sovereign immunity by the FTCA, 28 U.S.C. § 1346(b), was hedged by thirteen stated exceptions, one of them being § 2680(c) which provides, in essence, that the government preserves its immunity as to "[a]ny claim arising in respect of ... the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer." Responding to the reliance of Mr. Kosak upon *Alliance*, the Court wrote:

> We find the conclusion reached by ... the Second Circuit far from "inescapable." The specificity of § 2680(b), in contrast with the generality of § 2680(c), suggests, if anything, that Congress intended the former to be *less* encompassing than the latter. The motivation for such an intent is not hard to find. One of the principal purposes of the Federal Tort Claims Act was to waive the Government's immunity from liability for injuries resulting from auto accidents in which employees of the Postal System were at fault. In order to ensure that § 2680(b), which governs torts committed by mailmen, did not have the effect of barring precisely the sort of suit that Congress was most concerned to authorize, the draftsmen of the provision carefully delineated the types of misconduct for which the Government was not assuming financial responsibility—namely, "the loss, miscarriage, or negligent transmission of letters or postal matter"— thereby excluding, by implication, negli-

gent handling of motor vehicles. The absence of any analogous desire to limit the reach of the statutory exception pertaining to the detention of property by customs officials explains the lack of comparable nicety in the phraseology of § 2680(c).

465 U.S. at 855, 104 S.Ct. at 1524 (emphasis in original). The conclusion reached by the Supreme Court in *Kosak*, a case arising from the smuggling of art, would be difficult to distinguish from this case, arising from the smuggling of drugs.

A question has been raised as to whether § 2680(c) applies where the claim arises in respect of the detention of goods by officers other than of customs or excise. That question arises from f.n. 6 in *Kosak* which reads in part: "We have no occasion in this case to decide what kinds of 'law enforcement officer[s],' other than customs officials, are covered by the exception" [of § 2680(c)].

In this circuit two cases reflect that uncertainty. In *Formula One Motors, Ltd. v. United States,* 777 F.2d 822 (2d Cir.1985), agents of the Drug Enforcement Administration ("DEA"), in the course of executing a warrant to seize and search for narcotics an automobile that Formula One was importing into the country from Italy, had destroyed the automobile. Formula One sought to recover damages in its suit against the government under FTCA, 28 U.S.C. §§ 1346(b), 2671–2680. The district court dismissed the claim for lack of subject matter jurisdiction, ruling that the exception to the FTCA, § 2680(c) applied. The Court of Appeals affirmed, and in doing so wrote as follows:

> In the instant case we are satisfied that the detention of the automobile and its search by DEA agents fell within the scope of section 2680(c), without determining whether the exemption would apply to searches by law enforcement officers with no relationship to the customs or excise functions. The DEA agents seized and searched an automobile that had been shipped from abroad and was still in its shipping container. The agents were searching for smuggled narcotics, though, as it happened, no drugs were found. The

---

3. This statute makes it a crime to smuggle goods into the United States.

seizure of an automobile still in transit from overseas and a search of that automobile for narcotics are sufficiently akin to the functions carried out by Customs officials to place the agents' conduct within the scope of section 2680(c).

777 F.2d at 823–24. The conclusion reached by the court in finding a relationship between a search for narcotics in goods still in transit from abroad and the functions of Customs officials, would also be difficult to distinguish from this case arising out of a search for narcotics in goods seized while still in transit from abroad.

In *Perez v. United States*, 838 F.Supp. 860 (S.D.N.Y.1993), a claim was brought against the United States to recover jewelry seized from the plaintiff's apartment by DEA agents in a pre-dawn raid of several suspected drug distribution sites. In the course of its opinion denying the government's motion bottomed upon § 2680(c), the court observed:

> The Court of Appeals of this Circuit has not decided whether "any other law enforcement officer" includes non-customs or excise agents detaining property for reasons other than customs or tax collection. *Formula One Motors, Ltd. v. United States*, 777 F.2d 822, 823–24 (2d Cir.1985) (held that the detention of imported automobile by DEA agents fell within the scope of § 2680(c) because they were carrying out functions similar to those of customs agents ...)

838 F.Supp. at 862. The court went on to decide that the question left unanswered by the higher courts need not be resolved because the plaintiff's claim was not based solely on the "detention" of her property.

Other cases in this circuit have had occasion to address the issue. In *Sterling v. United States*, 749 F.Supp. 1202 (E.D.N.Y. 1990) money suspected of being traceable to or used to facilitate a drug transaction was seized by DEA agents from the plaintiff at LaGuardia Airport and forfeited in accordance with 21 U.S.C. § 881(a)(6). The plaintiff's claim for the return of the money, brought pursuant to the FTCA, was dismissed on the ground that § 2680(c) was applicable.

In *Garnay, Inc. v. M/V Lindo Maersk*, 816 F.Supp. 888 (S.D.N.Y.1993), the court held that § 2680(c) precluded a claim against the government, pursuant to the FTCA, for damages to exotic leaves allegedly caused by the FBI during the course of a sting operation that agency was conducting. In granting the government's motion to dismiss for lack of subject matter jurisdiction, the court applied § 2680(c) and the teaching of *Kosak v. United States, supra*. In a trenchant opinion, Judge Haight found surprising the Second Circuit's reliance upon *Alliance Assurance Co. v. United States, supra*, in support of its decision in *Mora v. United States, supra*, that § 2680(c) was not applicable without making any mention of *Kosak*. Judge Haight went on to hold:

> However one may explain the mystery of *Mora*, I am bound by *Kosak*, and conclude that if the agents of the FBI are "law enforcement officers" within the meaning of 2680(c), that section bars the asserted claim in tort for damage to the leaves during the FBI's sting operation-related detention of the leaves.

> On that remaining issue, it seems clear that FBI agents are law-enforcement officers within the statute. If they are not, it is difficult to imagine who is.

816 F.Supp. at 897.

Other circuits that have addressed the reach of the phrase "other law-enforcement officer" in § 2680(c) have decided that the statute applies beyond customs or excise officers. In *United States v. $149,345 United States Currency*, 747 F.2d 1278 (9th Cir. 1984), the statute was applied to the seizure of money pursuant to 21 U.S.C. § 881 by DEA agents. In *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481 (10th Cir.), cert. denied, 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984), the statute was applied to the seizure of adulterated beef pursuant to the Meat Inspection Act by officers of the U.S. Department of Agriculture. In *United States v. Lockheed L–188 Aircraft*, 656 F.2d 390 (9th Cir.1979), the statute was applied to the seizure of an aircraft by the Federal Aviation Administration. In *United States v. 1500 Cases, More or Less*, 249 F.2d 382 (7th Cir.1957), the statute was applied to the sei-

zure of adulterated food by United States Marshals. *Halverson v. United States,* 972 F.2d 654 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993) is in accord and virtually identical to this case. There, Halverson was arrested at an immigration checkpoint by Border Patrol agents who found cocaine concealed in the car in which he was riding. He brought suit under the FTCA to recover $5,735 in damages for the loss of personal property seized incident to his arrest claiming that the loss was attributable to the failure of the arresting officers to follow proper inventory procedures. The government moved to dismiss for want of subject matter jurisdiction pursuant to § 2680(c) and Rule 12(b)(1). In opposing the motion, Halverson urged the limitation of § 2680(c) to customs and excise agents. The issue was one of first impression in that circuit. The court affirmed the grant of the government's motion holding that "§ 2680(c) exempts from the FTCA's waiver of sovereign immunity any claim based on the detention of goods by any federal law enforcement officers in the performance of their lawful duties." 972 F.2d at 656. *See also, Schlaebitz v. United States,* 924 F.2d 193 (11th Cir.1991); *Cheney v. United States,* 972 F.2d 247 (8th Cir.1992); *Ysasi v. Rivkind,* 856 F.2d 1520 (Fed.Cir. 1988). Cf. *Kurinsky v. United States,* 33 F.3d 594 (6th Cir.1994) (limiting the reach of § 2680(c) to customs and excise officers and holding it to be inapplicable to the FBI).

The majority of circuit courts having had occasion to consider the span of § 2680(c) have construed it as did the court in *Halverson.* They have thus been faithful to the teaching of the Supreme Court that the construction of statutes must begin with the language of the statute, upon the assumption that "the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962). The phrase "any other law enforcement officer" would appear to be a very clear expression of Congressional purpose. The reference in *Kosak* to the report of the draftsman of § 2680(c), Judge Alexander Holtzoff, lends support to the "plain language" interpretation of that phrase in *Halverson* and in the

majority of other circuit court cases. In that report, Judge Holtzoff wrote:

> [The proposed provision would exempt from the coverage of the Act] [c]laims arising in respect of the assessment or collection of any tax or customs duty. This exception appears in all previous drafts. It is expanded, however, so as to include immunity from liability in respect of *loss in connection with the detention of goods or merchandise* by any officer of customs or excise. The additional proviso has special reference to the detention of imported goods in appraisers' warehouses or customs houses, *as well as seizures by law enforcement officials, internal revenue officers, and the like.* A. Holtzoff, Report on Proposed Federal Tort Claims Bill 16 (1931) (Holtzoff Report) (emphasis added) (underscoring mine).

465 U.S. at 856, 104 S.Ct. at 1524.

The plain language of the statute, said the Court, also coincides with the general purposes of Congress in creating exceptions to the FTCA. The purposes most frequently alluded to are: "ensuring that 'certain governmental activities' not be disrupted by the threat of damages suits; avoiding exposure of the United States to liability for excessive or fraudulent claims; and not extending the coverage of the Act to suits for which adequate remedies were already available." 465 U.S. at 858, 104 S.Ct. at 1525. The accommodation of this case to those purposes is readily apparent. The control of the importation of drugs into this country has been an objective of high priority and the vigor with which the drug laws are enforced and the importation of drugs interdicted should not be dampened by concerns about defending law suits.

The objective of shielding the United States from fraudulent claims may be exemplified here. Rufu, a citizen of Nigeria, was arrested when he arrived at John F. Kennedy International Airport on a flight from Poland and was found to be in possession of heroin during a routine customs inspection. The personal property he claimed to have been taken from him and which he seeks damages for are: a leather mink coat valued

at $1,500; a diamond wedding ring valued at $1,000; three suits and two pairs of shoes valued at $1,500; three shirts valued at $450; two pants valued at $300; one blanket and bed sheet—$100; two bags—$200; underwear, towels and socks—$150; Minolta camera and lens—$1,000; two leather belts—$100, for a total of $6,350. The claimed possession of the leather mink coat, shirts worth ·$150 each, trousers worth $150 a pair is remarkable given the financial statement given to the probation office not long after his arrest, reflecting no assets and an indebtedness of $2,000. In view of the foregoing, a heightened appreciation would be understandable for the Court's observation that "Congress may have reasoned that the frequency with which the Government would be obliged to pay undeserving claimants if it waived immunity from such suits offset the inequity, resulting from retention of immunity, to persons with legitimate grievances." 465 U.S. at 859–60, 104 S.Ct. at 1526. The inequity to which it may be claimed the Congressional purpose gives rise "is properly addressed to Congress, not to this Court." 465 U.S. at 862, 104 S.Ct. at 1527.

Finally, there can be no dispute that an agent of the DEA is a "law enforcement officer" within the meaning of § 2680(c). *See* 21 U.S.C. § 878. As Judge Haight so aptly put it, "[i]f they are not, it is difficult to imagine who is."

■ I turn now to the second issue raised by *Mora* and *Alliance,* if sovereign immunity has been retained, is it vulnerable to a claim for equitable relief? The answer is no. The only form of relief provided in the Federal Tort Claims Act is money damages. *Birnbaum v. United States,* 588 F.2d 319, 335 (2d Cir.1978); *Talbert v. United States,* 932 F.2d 1064 (4th Cir.1991); *Walker v. United States,* 116 F.R.D. 149, 152 (S.D.N.Y.1987); *New York v. United States,* 620 F.Supp. 374 (E.D.N.Y.1985); *Ryan v. Cleland,* 531 F.Supp. 724, 732 (E.D.N.Y.1982).

■ If the foregoing analysis is correct, to conduct further proceedings as directed by the Court of Appeals would be superfluous and the exercise of jurisdiction over subject matter which Congress denied to the court. To refuse to do so would surely be deemed to be recalcitrant and a clear violation of the district court's obligation to follow the command of the circuit court. Accordingly, the government's motion to dismiss Rufu's claim to money damages is granted. The equitable claim is hereby directed to be heard on February 3, 1995, at 2:15 p.m.

It is conservatively estimated that there have been more than a hundred cases similar to Rufu's filed in this district alone. The facts in each are essentially the same. A drug smuggler is apprehended at John F. Kennedy Airport carrying drugs concealed internally, in false bottomed suitcases, in bottles of liquor, a portable radio or in some other hopefully innocuous and innocent appearing object. The drugs are detected and an agent of the DEA is notified. In the interim, the smuggler is arrested, his possessions seized, and an indictment, conviction and sentence follow soon thereafter. He is designated to a facility generally far removed from New York and invariably, the sentencing judge receives a letter requesting the return of the personal property taken from him at the airport. That letter is regarded as a complaint, a civil case number is assigned, and the United States Attorney is directed to respond. That leads to inquiries of Customs and DEA regarding the requested property and searches by those agencies of their respective storage facilities and records. In the interim, administrative forfeiture proceedings may have been commenced and completed which prompts the United States Attorney to move to dismiss the complaint for the reason that the administrative proceeding divested this court of jurisdiction. The motion is granted and a predictable letter is then received from the prisoner stating that he never received notice of the administrative proceeding. There are a number of variations of the foregoing, to say nothing of the appeals that follow the dismissal and the remands by the circuit court directing the district court to begin again. The point of recounting all this is to convey the sense of admiration one must feel for the ability of an alien to attempt to smuggle drugs into the country and upon failing to succeed, put the United States and its agencies on trial for becoming involuntary bailees of the para-

phernalia they bring with them to facilitate their smuggling adventure and consume an incalculable amount of time and energy of federal judges, clerks and the many other persons necessarily recruited to deal with their claims.

SO ORDERED.