**HATZLACHH SUPPLY COMPANY, INC.**

v.

**The UNITED STATES.**

**No. 120–76.**

United States Court of Claims.

July 14, 1978.

Rehearing and Rehearing En Banc Denied Sept. 29, 1978.

618

Mark Landesman, Brooklyn, N. Y., attorney of record, for plaintiff.

George M. Beasley, III, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Richard A. Corwin, New York City, attorney of record, for noticed third-party Sea-Land Service, Inc.

Before DAVIS, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

This action, involving plaintiff's claim that the Government breached an implied-in-fact contract which allegedly arose from the detention of certain merchandise by United States Customs Service personnel comes before the court on defendant's motion for summary judgment and plaintiff's opposition thereto. Because we essentially agree with the Government's argument concerning the clear congressional intent to retain sovereign immunity with regard to claims arising out of detentions of materials by customs inspectors, we hold that plaintiff's petition does not state a claim upon which relief can be granted and, accordingly, we grant defendant's motion.

Hatzlachh Supply Company (Hatzlachh or plaintiff) alleges that in 1970 it imported certain camera supplies and miscellaneous items from Germany which, upon arrival in port in New Jersey, were seized and declared forfeited by the United States Customs Service (USCS). Plaintiff followed statutory and regulatory procedures in seeking relief from the forfeiture. See 19 U.S.C. § 1618 (1970); 19 C.F.R. § 171.11–13 USCS, in October of 1970, agreed to return the forfeited materials upon payment of a $40,000 penalty. Hatzlachh complied with the terms prescribed by the USCS and paid the $40,000 into the Treasury of the United States. Upon the return of the seized material to plaintiff, it was noted that certain items were inexplicably missing. Hatzlachh brought suit in this court seeking to recover $165,220.50 (plus $2,000,000 for alleged loss of "face and good will . . .") which it alleges was the total value of the goods that were "pilfered" or "stolen" while the forfeited material was in the possession of the defendant.

Defendant now moves for summary judgment on grounds that plaintiff has failed to state a claim within the jurisdiction of this court. Plaintiff's petition set forth two separate causes of action. The first involved an alleged breach of a contract of bailment while the second alleged that the seizures were "capricious, arbitrary, unreasonable, unlawful and not sanctioned nor colored" by law and that they "constituted an unreasonable detainer of plaintiff's property and deprivation without due process."

We agree with the defendant that plaintiff's second cause of action is unsupportable. Plaintiff's own petition to the Regional Commissioner of Customs admitted that the merchandise description submitted to the USCS officials was "erroneous" and that the discrepancy between the merchandise description and the items actually landed were "obvious and apparent." Although plaintiff's petition goes on to question the propriety of the USCS's ac-

tions against the goods, such "obvious and apparent" deviations from prescribed USCS import procedures certainly would render the USCS's action non-arbitrary and non-capricious, although perhaps of questionable severity.

Even if we should determine that the defendant's actions were so arbitrary and capricious as to be outside the broad statutory and regulatory discretion and authority accorded the USCS, this portion of plaintiff's second cause of action would then sound in tort, and this court would be without jurisdiction. 28 U.S.C. § 1491 (Supp. V 1975); *Algonac Mfg. Co. v. United States,* 428 F.2d 1241, 192 Ct.Cl. 649 (1970).

The second portion of plaintiff's second cause of action is equally without merit. Defendant's declaring a forfeiture of goods under 19 U.S.C. § 1592 (1970) is hardly comparable to a "taking" for public use without just compensation, which would allow plaintiff to recover pursuant to the Fifth Amendment's ban on such taking. *See, e. g., Huerta v. United States,* 548 F.2d 343, 212 Ct.Cl. 473, *cert. denied,* 434 U.S. 828, 98 S.Ct. 108, 54 L.Ed.2d 88 (1977). Again, plaintiff is faced with the situation where the forfeiture was either declared in accordance with statutory and regulatory guidelines, in which plaintiff *was* accorded the "due process of law" and there was no "taking," or else the action taken was outside statutory and regulatory authority, in which case this court is without jurisdiction because plaintiff's action sounds in tort.

Plaintiff's first cause of action, however, based on the Government's breach of an implied contract of bailment, presents a much more difficult and serious problem. Plaintiff contends that the USCS, in taking custody of the goods, made only a provisional seizure pending full disposition on the merits. Plaintiff further relies upon the language of 28 U.S.C. § 2465 (1970), which states:

Upon the entry of judgment for the claimant in *any proceeding to condemn or*

*forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant . . .* (emphasis supplied in plaintiff's brief)

for the proposition that the Government's allegedly provisional seizure created an implied contract of bailment between Hatzlachh and the United States. Plaintiff's logical conclusion is that, in failing properly to protect and return some of the material seized, defendant breached this implied contract of bailment.

Plaintiff's argument gains considerable support from the decision of the Second Circuit in *Alliance Assurance Company v. United States,* 252 F.2d 529 (2d Cir. 1958). In that case involving similar circumstances, the court, in a two-part holding, determined that an implied-in-fact contract did exist[1] between the USCS and the importer and that the importer had an alternate cause of action under the Federal Tort Claims Act. The Federal Tort Claims Act assumes significance in *Alliance,* as it does in the case at hand, for two reasons. One is the resemblance which the importer's claim of a breach of contract bears to a claim for a breach of duty in tort. The other reason is that such claims in tort are explicitly barred by 28 U.S.C. § 2680(c) (1970), which excepts from the coverage of the Tort Claims Act:

Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs . . . . .

The *Alliance* court, interestingly, found that the § 2680(c) exclusion did not apply because the merchandise in question had disappeared and goods which had disappeared could not have been subject to "detention" within the meaning of the statute. Even more to the point, however, the court in *Alliance* reasoned that the Government had, by exerting its statutory authority over the goods, implied a promise to return the goods to the importer. Thus, the court determined that plaintiff in *Alliance* had

---

1. Since the claim in *Alliance* was for an amount less than $10,000, the Federal District Court had concurrent jurisdiction with the Court of Claims. 28 U.S.C. § 1346(a)(2) (1970).

causes of action under both the Tucker Act, 28 U.S.C. § 1491 (Supp. V 1975) and the Tort Claims Act.

The defendant argues that *Alliance* was *wrongly* decided and is, in any event, distinguishable from the case at hand. It contends that the *Alliance* court, in reversing its own district court, incorrectly utilized the "loose, umbrella concepts of bailment law" to broaden drastically the Tucker Act's limited waiver of sovereign immunity. The Government further points out for support this court's "venerable precedent" in *Schmalz v. United States,* 4 Ct.Cl. 142 (1868), where we held that the general law requiring customs inspection did not imply a contract with the Government.[2] Finally, defendant cites the rationale of the district court judge in *Alliance* in arguing that no implied-in-fact contract could exist because there was no mutual assent.

Even if the *Alliance* decision were correct, continues the Government, that case was distinguishable from the one at hand. In *Alliance,* the court was faced with a situation where the goods which subsequently disappeared had merely been detained for inspection pursuant to 19 U.S.C. § 1499, while, in our present case, the goods had actually been seized subject to forfeiture pursuant to 19 U.S.C. § 1592 (1970), because a violation of the customs laws had already been found. The defendant concludes that, since goods seized subject to forfeiture (under § 1592) can be returned only after some judicial discretionary or administrative determination has been made, no implied-in-fact contract could possibly have arisen out of the seizure.

The Government's final contention centers on the important public policy involved in allowing customs officials to go about their work unimpeded by fear of "implied in fact" contract claims each time they must seize or detain some item and on the related theory that waivers of sovereign immunity must be strictly construed. We

reach the same result as does the defendant, although for the somewhat different reasons stated below.

Initially, it must be noted that the statutes cited by the plaintiff, along with the action of the USCS in agreeing to return the seized goods upon payment of a $40,000 fine by Hatzlachh, could make a strong case for the existence of an implied-in-fact contract properly to preserve and redeliver all the goods to Hatzlachh. All other things being equal, such a factual and legal combination might enable plaintiff to prevail.

However, we need not now decide this issue because, unfortunately for plaintiff, all other things in the present case are not equal. This court has previously held that there can exist no contract implied-in-fact unless there is an actual meeting of the minds and a mutual intent to be bound. *See, e. g., Somali Development Bank v. United States,* 508 F.2d 817, 822, 205 Ct.Cl. 741, 751 (1974). Plaintiff here would have us *imply* a promise, or intent to be bound, on the part of the Government similar to the promise implied by the Second Circuit in *Alliance:*

> It is at least as reasonable to imply such a promise here as it is to imply a promise by the government to pay for lands it has tortiously appropriated as was done in *United States v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (alternative holding), and *United States v. Lynah,* 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539.

There are, however, two major obstacles to adopting the rationale of *Alliance.* The first is the obvious factual distinction between the Government's tortious (or nontortious) seizure of land from the unquestioned, rightful owner [as in *Dickinson* ] and the USCS' seizure subject to forfeiture of goods entering the country illegally [as in our present case]. In our view, finding an implied promise to pay in the former set of circumstances certainly would not necessitate finding a similar promise to pay (or return the goods) in the latter.

---

**2.** Defendant also notes that *Alliance* stands alone in holding the § 2680(c) Tort Claims Act exclusion inapplicable under similar circumstances, *citing United States v. 1500 Cases,* 249

F.2d 382 (7th Cir. 1957); *S. Schonfeld Co., Inc. v. S. S. Akra Tenaron,* 363 F.Supp. 1220 (D.S.C. 1973); *Bambulas v. United States,* 323 F.Supp. 1271 (D.S.D.1971).

An even more significant obstacle, however, is encountered in Congress' specific and explicit rejection of any tort liability for "[a]ny claim arising in respect of . . . the detention of any goods or merchandise by any officer of customs." 28 U.S.C. § 2680(c). With this strong, all-inclusive language, the legislative branch of our Government affirmatively recognized the vital importance to the public of unimpeded lawful operations by customs officers and refused to waive sovereign immunity with respect to those functions specified. Notwithstanding the possible interpretation which the *Alliance* court might give to the facts now before us, it appears clear to us that Hatzlachh's claim obviously arose "in respect of . . . the detention of . . . goods or merchandise by [an] . . . officer of customs . . . ."

In a recent decision, this court refused to find an implied-in-fact contract in a situation where Congress had, according to the Supreme Court's interpretation of the Tort Claims Act in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), restricted a serviceman's recovery for injuries—even those tortiously inflicted—to certain statutorily prescribed procedural and substantive limitations. *Jackson v. United States,* 573 F.2d 1189, 216 Ct.Cl. —— (1978). In *Jackson* we cited the Supreme Court's recent decision in *Stencel Aero Eng'r Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), which noted that allowing recovery on an implied-in-fact contract would be to "judicially admit at the back door that which has been legislatively turned away at the front door." 431 U.S. at 673, 97 S.Ct. at 2059. We concluded that "Since a soldier cannot circumvent the compensation system by suing in tort for additional money damages for injuries, there is no logical reason to allow him to circumvent the congressionally mandated limitations in a suit that he characterizes as one for breach of contract, which is the case here." *Jackson, supra,* 573 F.2d at 1199, 216 Ct.Cl. at ——.

The exact rationale we employed in *Jackson* gains added strength in the case at hand. Here, Congress has *specifically precluded recovery* in claims arising from customs detentions, even where such claims arose from tortious actions by the Government. This being the fact, it would certainly be a trespass on congressional prerogatives for this court now to hold that, by seizing subject to forfeiture certain merchandise, the Government *assented* to, or agreed to be bound by, an implied-in-fact contract to return the merchandise whole. Lacking such assent by one of the parties (and here it is doubtful whether either of the parties actually agreed), we cannot find an implied-in-fact contract. *See, e. g., Somali Development Bank v. United States,* 508 F.2d 817, 205 Ct.Cl. 741 (1974). While we may sympathize with the plaintiff for the loss of such a substantial amount of goods, we cannot judicially allow by the back door a claim which was, rather clearly and explicitly, legislatively barred at the front.

But we do not consider the present decision as necessarily controlling a case in which there were additional facts from which an implied or express agreement could possibly arise, e. g., a promise, representation or statement that the goods would be guarded or carefully handled. It is conceivable to us that, in such circumstances, a claim might lie under the Tucker Act even though 28 U.S.C. § 2680(c) might still preclude recovery under the Tort Claims Act.

For the above-stated reasons, after reading all of the submissions in the light most favorable to the plaintiff for purposes of plaintiff's opposition to this motion for summary judgment, we hold that Hatzlachh has failed to state a claim based on an implied-in-fact contract[3] and has, therefore, failed to state a claim for which we can grant relief.

---

3. Plaintiff's other contentions, as outlined and discussed above, we hold to be equally without merit.

Accordingly, after consideration of all the submissions of the parties, and without oral argument, defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.