HATZLACHH SUPPLY CO., INC. *v.* UNITED STATES

No. 78–1175.   Argued December 5, 1979—Decided January 21, 1980

*Nathan Lewin* argued the cause for petitioner.   With him on the briefs were *Jamie S. Gorelick* and *Mark Landesman.*

*Kent L. Jones* argued the cause *pro hac vice* for the United States.   With him on the brief were *Solicitor General Mc-*

*Cree, Acting Assistant Attorney General Daniel, Eloise E. Davies,* and *Frank A. Rosenfeld.*

PER CURIAM.

We granted certiorari in this case to consider whether the United States may be held liable for breach of an implied contract of bailment when goods are lost while held by the United States Customs Service (USCS) following their seizure for customs violations. 441 U. S. 942 (1979). The Court of Claims granted the Government's motion for summary judgment, finding that petitioner had failed to state a claim upon which the court could grant relief. 217 Ct. Cl. 423, 579 F. 2d 617 (1978). We vacate the Court of Claims' judgment and remand the case for further proceedings.

Petitioner imported camera supplies and other items which USCS seized upon their arrival in port and declared forfeited for customs violations. On petitioner's appropriate procedure for relief, USCS agreed to return the forfeited materials upon petitioner's payment of a $40,000 penalty. When the shipment was returned to petitioner, however, merchandise valued in excess of $165,000 was missing. Petitioner brought suit under the Tucker Act, 28 U. S. C. § 1491, for the value of the missing merchandise,[1] alleging breach of an implied contract of bailment.[2]

The Court of Claims initially conceded that "the statutes cited by the plaintiff, along with the action of the USCS in agreeing to return the seized goods upon payment of a $40,000 fine by Hatzlachh, could make a strong case for the existence of an implied-in-fact contract properly to preserve and re-deliver all the goods to Hatzlachh." 217 Ct. Cl., at 428, 579

---

[1] Petitioner also sought damages, no longer in issue, for loss of "face and good will."

[2] As a second cause of action, petitioner alleged a capricious and arbitrary seizure, "unreasonable detainer" of property, and "deprivation without due process." Petitioner does not challenge the dismissal of this cause of action.

F. 2d, at 620. The court noted, however, that 28 U. S. C. § 2680 (c) excepts from the tort liability of the Government under the Federal Tort Claims Act any claim "arising in respect of . . . the detention of any goods or merchandise by any officer of customs." Because in its view this provision would bar a tort claim for the loss that occurred in this case, the court thought that it "would certainly be a trespass on congressional prerogatives for this court now to hold that, by seizing subject to forfeiture certain merchandise, the Government *assented* to, or agreed to be bound by, an implied-in-fact contract to return the merchandise whole." 217 Ct. Cl., at 430, 579 F. 2d, at 621. The Court of Claims accordingly declined to find an implied-in-fact contract, remarking that it could not "judicially allow by the back door a claim which was, rather clearly and explicitly, legislatively barred at the front." *Ibid.*

We cannot agree with the Court of Claims that § 2680 (c) is such a major obstacle to awarding judgment against the Government on an implied contract. Section 2680, which is entitled "Exceptions," declares that "[t]he provisions of this chapter . . . shall not apply to" certain kinds of claims, which are then described. Among the excepted claims are those specified in § 2680 (c)—claims "arising in respect of . . . the detention of any goods or merchandise" by any customs officer. The section, although excluding certain claims from the statutory waiver of immunity from tort liability,[3] does

---

[3] We proceed in the text on the assumption, but without deciding, that the Court of Claims was correct in holding that the loss alleged in this case was a claim arising from the detention of goods by a customs officer and hence within the exception carved out by § 2680 (c). Petitioner disputes this holding, claiming that the section is limited to wrongful detentions and does not deal with *losses* and that the courts are divided on the interpretation of the section. *A-Mark, Inc.* v. *United States Secret Service,* 593 F. 2d 849 (CA9 1978), and *Alliance Assurance Co.* v. *United States,* 252 F. 2d 529 (CA2 1958), it is said, permit recovery under the Tort Claims Act for the loss of goods detained by customs officers; whereas this case, *United States* v. *One (1) 1972 Wood, 19 Foot Custom*

not limit or otherwise affect immunity waivers contained in other statutes such as the Tucker Act, which invests the Court of Claims with jurisdiction to render judgment "upon any claim against the United States founded . . . upon any express or implied contract with the United States."

Neither does its legislative history support the view that § 2680 (c), first passed in 1946 as part of the Federal Tort Claims Act, was intended to declare the immunity of the United States from express or implied contracts with customs officers that would, or might, otherwise be within the jurisdiction of the Court of Claims under the Tucker Act. On the contrary, it appears that in exempting from the Tort Claims Act those claims described in § 2680 (c), Congress did not further intend to disturb other existing statutory remedies. H. R. Rep. No. 2245, 77th Cong., 2d Sess., 10 (1942); S. Rep. No. 1196, 77th Cong., 2d Sess., 7 (1942); H. R. Rep. No. 1287, 79th Cong., 1st Sess., 6 (1945); S. Rep. No. 1400, 79th Cong., 2d Sess., 33 (1946); Tort Claims Against the United States: Hearings on S. 2690 before a Subcommittee of the Senate Committee on the Judiciary, 76th Cong., 3d Sess., 38 (1940); Tort Claims: Hearings on H. R. 5373 and H. R. 6463 before the House Committee on the Judiciary, 77th Cong., 2d Sess., 28, 44 (1942).[4] Nothing in these sources, nor anything else

---

*Boat, FL8443AY,* 501 F. 2d 1327 (CA5 1974), and *S. Schonfeld Co.* v. *S. S. Akra Tenaron,* 363 F. Supp. 1220 (SC 1973), construe § 2680 (c) to except such losses from the Tort Claims Act.

We need not resolve the conflict. If petitioner is correct in its interpretation, § 2680 (c) would itself present no barrier to either contractual or tort liability. Nor would the existence of a Tort Claims Act remedy in this case be preclusive of pre-existing contractual remedies under the Tucker Act, at least absent some reasonably clear evidence that Congress intended to foreclose contractual remedies in the circumstances obtaining here.

[4] When Congress first considered the exception in 1940, Judge Alexander Holtzoff, then a Special Assistant to the Attorney General, testified before the Senate Judiciary Subcommittee considering the bill. As the then Mr. Holtzoff described the intended effect of the various exemptions, cer-

called to our attention, indicates that the Tort Claims Act withdrew to any extent existing remedies for the breach of express or implied contracts. Others have read the statute and its legislative history to this effect. See 2 L. Jayson, Personal Injury: Handling Federal Tort Claims § 256 (1979); Gellhorn & Schenck, Tort Actions Against the Federal Government, 47 Colum. L. Rev. 722, 729–730 (1947); Gottlieb, The Federal Tort Claims Act—A Statutory Interpretation, 35 Geo. Law J. 1, 45 (1946); Comment, The Federal Tort Claims Act, 42 Ill. L. Rev. 344, 360 (1947); Note, The Federal Tort Claims Act, 56 Yale L. J. 534, 547–548 (1947).

The Court of Claims relied on *Stencel Aero Engineering Corp.* v. *United States,* 431 U. S. 666 (1977), where it was held that the United States is not liable under the Tort Claims Act to indemnify a third party for damages paid to a member of the Armed Forces who was injured in military training. Recognizing that the Veterans' Benefits Act provided compensation to injured servicemen, which we understood Congress intended to be the sole remedy for service-connected injuries, we declined to construe the Tort Claims Act to permit third-party indemnity suits that in effect would expose the Government to greater liability than that contemplated under the statutory compensation scheme. In *Stencel,* Congress had provided a remedy, which we thought to be exclusive. Here, however, § 2680 (c) denies a tort remedy for cer-

---

tain of them, such as the loss or miscarriage of postal matter and certain intentional torts, were included because they related to activities for which, as a policy matter, the Government should be free from tort claims. Other exemptions, such as the assessment or collection of taxes or customs duties, the detention of goods by customs officers, and admiralty or maritime torts, were included because various other laws provided the machinery for recovery on these claims and "[t]here was no purpose in interfering with that machinery." Tort Claims Against the United States: Hearings on S. 2690 before a Subcommittee of the Senate Committee on the Judiciary, 76th Cong., 3d Sess., 38–39 (1940). The purpose was to avoid duplication; there was no indication that existing remedies, if any, were withdrawn.

tain claims; and we fail to see how the *Stencel* holding that the existence of an exclusive statutory compensation remedy negates tort liability supports the conclusion that if the Tort Claims Act bars a tort remedy, neither is there a contractual remedy.

The absence of Government tort liability has not been thought to bar contractual remedies on implied-in-fact contracts, even in those cases also having elements of a tort. In *Keifer & Keifer* v. *RFC*, 306 U. S. 381 (1939), the Government argued that because a Government corporation could not be sued for negligence, neither could it be sued for breach of contract of bailment. The Court rejected the argument, holding that even if there was tort immunity, the waiver of immunity with respect to contract claims was not limited to "suits on contract, express or implied, not sounding in tort." See also *Aleutco Corp.* v. *United States,* 244 F. 2d 674, 679 (CA3 1957); *New England Helicopter Service, Inc.* v. *United States,* 132 F. Supp. 938, 939 (RI 1955).[5]

The United States does not now defend the reasoning of the Court of Claims that § 2680 (c) forecloses a remedy on an implied-in-fact contract of bailment. Tr. of Oral Arg. 37–38. It does support the judgment on a ground concededly not urged in the Court of Claims: that the contractual remedy should be rejected because individual customs officers are subject to tort liability and because 28 U. S. C. § 2006 provides that judgments against customs officers for negligent

---

[5] The Tucker Act itself is only a jurisdictional statute, of course, and does not create a substantive right to money damages. *United States* v. *Testan,* 424 U. S. 392, 398 (1976). The enforceable claim in this case must arise from the alleged contract. Moreover, the Court of Claims' jurisdiction with respect to contracts extends only to actual contracts, either express or implied in fact; it does not reach claims on contracts implied in law. *Alabama* v. *United States,* 282 U. S. 502, 507 (1931); *Goodyear Tire & Rubber Co.* v. *United States,* 276 U. S. 287, 292–293 (1928); *United States* v. *Minnesota Mutual Investment Co.,* 271 U. S. 212, 217 (1926); *Hill* v. *United States,* 149 U. S. 593, 598 (1893).

loss of goods, where seizure was made with probable cause, shall be paid by the United States. The existence of this private recourse, it is urged, counsels against recognizing a contractual remedy under the Tucker Act. We find the argument unpersuasive. There is no inconsistency between a contractual remedy against the Government and a tort remedy against customs officers. Cf. *Keifer & Keifer, supra*. Without more, neither the existence of a tort remedy nor the lack of one is relevant to determining whether there is an implied-in-fact contract of bailment upon which the United States is liable in the Court of Claims pursuant to its waiver of sovereign immunity contained in the Tucker Act.

Because the Court of Claims' judgment rested heavily on a mistaken view of the legal significance of § 2680 (c) and because the Court of Claims should first address the question of an implied-in-fact contract without regard to that section, we vacate the judgment of the Court of Claims and remand the case to that court for further proceedings consistent with this opinion.[6]

*So ordered.*

MR. JUSTICE BLACKMUN, dissenting.

I do not disagree with the legal principles pronounced by the Court in its *per curiam* opinion to the effect that 28 U. S. C. § 2680 (c) is not an obstacle to the awarding of judgment against the Government on an implied contract, *ante,* at 462; or that, in exempting from the Tort Claims Act those claims described in § 2680 (c), Congress did not also intend to disturb other existing statutory remedies, *ante,* at 463; or that *Stencel Aero Engineering Corp.* v. *United States,* 431 U. S. 666 (1977), does not control this case, *ante,* at 464–465; or that the absence of governmental tort liability does

---

[6] We indicate no view, one way or the other, as to whether an implied-in-fact contract could be found on the record in this case.

not bar contractual remedies on implied-in-fact contracts, *ante,* at 465; or that there is no inconsistency between a contractual remedy against the Government and a tort remedy against customs officers, *ante,* at 466. But I dissent from the Court's vacating the judgment of the Court of Claims and its remanding the case to that court for further proceedings.

I dissent because I am persuaded that an implied-in-fact contract is not to be found on the record in this case, and because I believe the remand is, or should be, a useless exercise leading to an inevitable result.

It is clear that jurisdiction of the Court of Claims extends to contracts implied in fact but not to those implied in law, See *United States* v. *Minnesota Mutual Investment Co.,* 271 U. S. 212, 217–218 (1926); *Merritt* v. *United States,* 267 U. S. 338, 341 (1925). Here, the Customs Service seized the goods and declared them forfeited for customs violations. There is no question as to the legality of that seizure. See *One Lot Emerald Cut Stones* v. *United States,* 409 U. S. 232, 234 (1972). Indeed, petitioner has admitted that the customs declaration was improper. 217 Ct. Cl. 423, 425, 579 F. 2d 617, 618 (1978); App. 11a, 18a. The Government's action, thus, was a claim of forfeiture and an assertion of ownership. There was no uninterrupted title in petitioner, recognized by the parties, as would constitute the basis of a contract implied in fact to return the goods. See *Baltimore & Ohio R. Co.* v. *United States,* 261 U. S. 592, 597 (1923). If the forfeiture is not upheld, the duty to return the goods is one implied, not in fact, but in law, and is so implied from the duty imposed upon the Customs Service by statute. See 28 U. S. C. § 2465. Any recovery for failure on the part of the Service to fulfill that duty would be founded in tort, or perhaps in equity, but not in contract.

It therefore seems to me inevitably to follow that there is no jurisdiction over this case in the Court of Claims. See *Baltimore & Ohio R. Co.* v. *United States, supra; Russell*

*Corp.* v. *United States*, 210 Ct. Cl. 596, 609, 537 F. 2d 474, 482 (1976), cert. denied, 429 U. S. 1073 (1977). Any remedy for petitioner lies elsewhere. Accordingly, I would affirm the judgment of the Court of Claims, albeit on a different ground from the one advanced by that court.