**John A. SHAW, Jr.**

v.

**The UNITED STATES.**

**No. 625–84C.**

United States Claims Court.

Oct. 9, 1985.

Peter S. Herrick, Miami, Fla., for plaintiff.

E. Kathleen Shahan, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant; Paul Virture, I. and N.S. of counsel.

## OPINION

LYDON, Judge:

Plaintiff's vessel was seized by the United States Immigration and Naturalization Service (INS), upon information and belief that it had been used to transport undocumented Colombian aliens into the United States. The vessel was subsequently returned to plaintiff upon a finding that, although it had been illegally utilized, plaintiff had no knowledge of this illegal use. Plaintiff alleges in his complaint that while the vessel was in the possession of the INS it was severely damaged due to deterioration, INS neglect and vandalism. Plaintiff seeks damages of $60,000, under Count I of his complaint, as an estimate of the costs necessary to restore the vessel to its pre-seizure condition. Plaintiff seeks damages of $100,000, under Count II of his complaint, for the loss of use of the vessel as a fishing boat during the seizure period. Under both Counts I and II, plaintiff bases his claims on violation of an implied or express contract. Plaintiff also seeks $100,000, under Count III of his complaint, for violation of his rights under the Fourth and Fifth Amendments to the Constitution relative to the seizure of his vessel.

Defendant, asserting that plaintiff has failed to state a claim upon which relief can be granted, has moved to dismiss plaintiff's complaint on jurisdictional grounds contending there was no express or implied-in-fact contract between plaintiff and defendant relative to his vessel and that plaintiff's constitutional claims fail to provide a basis for jurisdiction since the amendments relied on do not obligate the Federal Govern-

ment to pay money damages under the Tucker Act, 28 U.S.C. § 1491 (1982). Since defendant has appended affidavits and other documentation in support of its motion to dismiss, said motion is properly a motion for summary judgment and will be so considered by the court. *See* RUSCC 12(b). Plaintiff opposes defendant's motion on the ground that the court does have jurisdiction over his claims. However, plaintiff cites no case law in support of this opposition, nor does he attach any affidavits or documentation in support of his opposition.[1]

For reasons which follow, it is concluded that defendant's contentions have merit.

### I.

On May 29, 1980, the Anti-Smuggling Unit of the Border Patrol received information via telephone from the Wilton Manors Police Department, Wilton Manors, Florida, that the Police Department had received a call from an unknown source who had seen William Russell Hutchins (Hutchins) and a number of individuals disembark from a boat and go into a residence located at 2401 N.E. 18th Avenue. The caller further stated that this residence was owned by Hutchins. The Border Patrol Officer who received this call was Gary Hatmaker (Hatmaker). Hatmaker was a Criminal Investigator/Anti-Smuggling Officer assigned to the Border Patrol from the United States Immigration and Naturalization Service (INS). Hatmaker had previously arrested Hutchins in 1979 for bringing undocumented Colombian aliens into the United States in violation of 8 U.S.C. § 1324(b) (1982).

Following receipt of this call, Hatmaker and James E. Marshall (Marshall), another Border Patrol Officer, proceeded to the Hutchins residence. The officers interviewed several neighbors who confirmed that a number of individuals had disembarked from the boat in question and were still inside the Hutchins' residence. After obtaining a search warrant, a search of the residence turned up 17 undocumented Colombian aliens in the attic of the house. Informants and the involved aliens identified plaintiff's vessel as the boat in which they were transported into the United States.

Plaintiff's vessel, or boat, was a 1978 39- or 41-foot Performer speed boat, registered in Florida. Plaintiff had placed the boat in the custody of Hutchins for necessary repairs and storage outside Hutchins' residence prior to May 29, 1980. Having identified plaintiff's boat as the conveyance that transported the illegal aliens into the United States on May 29, 1980, the boat was seized by officers of the INS for violation of the provisions of 8 U.S.C. § 1324(b) on May 29, 1980. The seized vessel was inventoried, appraised and placed in storage at the Nautical Yacht Basin in Dania, Florida.

Hutchins was informed of the seizure, by letter dated May 29, 1980, in pertinent part as follows:

\* \* \* steps are being taken to forfeit this property [the boat] pursuant to 8 U.S.C. 1324(b) and 8 CFR 274.10—274.11. If it is your intention to file a Petition for the Remission or Mitigation of Forfeiture pursuant to 8 U.S.C. 1324(b) and 8 CFR 274.12, such petition should be filed in the triplicate with this office [Regional Commissioner, INS, U.S. Border Patrol, Miami, Florida] within thirty (30) days of the date of this letter.

1. In asserting that seizure of plaintiff's vessel did not give rise to a contract implied in fact between plaintiff and defendant, defendant cited *Hatzlachh Supply Co. v. United States,* 7 Cl.Ct. 743 (1985) (goods seized for suspected violations of Customs laws), *appeal dismissed,* No. 85–2501, 120–76 (Fed.Cir. Aug. 12, 1985). Recognizing the applicability of the holding in the *Hatzlachh* case (seizure did not give rise to a contract implied in fact) to the instant case, plaintiff suggested in his opposition brief that the "court should refrain from granting a motion as severe as a Motion to Dismiss until the Supreme Court ultimately renders its decision in the *Hatzlachh* case." Although an appeal was docketed with the Federal Circuit in the *Hatzlachh* case, as noted above this appeal was subsequently dismissed pursuant to appellant's (Hatzlachh) motion, and thus Supreme Court review is most unlikely.

There is no evidence in the materials at hand which shows that plaintiff was sent a similar letter or a copy of the above letter. It would appear the officials responsible for the seizure assumed Hutchins, who had custody and control of the boat, owned the boat. Plaintiff, however, became aware on or before July 30, 1980, of the fact that his boat had been seized.

Hutchins and two others thereafter were indicted, Fifteen Counts, on June 30, 1980, for bringing the 17 undocumented Colombian aliens into the United States on May 29, 1980, by means of a motor vessel in violation of 8 U.S.C. § 1324(b) and 18 U.S.C. § 2.

On July 30, 1980, plaintiff, *pro se,* filed a Petition for Remission or Mitigation of Forfeiture, for the return to him of his boat, with the Regional Commissioner as suggested in the above-mentioned May 29, 1980 letter. In this petition, plaintiff made no declaration that he was not involved in or aware of any illegal activities relative to use of his boat. The materials before the court do not indicate what action, if any, was taken on this administrative petition.

On December 4, 1980, plaintiff, through counsel, filed a Petition for Return of Seized Property in the pending District Court criminal case of *United States v. Hutchins,* Docket No. 80–6059–CK–ALH. This petition was denied by the District Court as being inappropriate on December 17, 1980. Thereafter, plaintiff, through counsel, immediately filed a Petition for Return of Seized Property with the INS. The materials at hand do not indicate what action, if any, was taken on this petition.[2] On March 20, 1981, plaintiff retained new counsel.

On June 10, 1981, plaintiff filed a Petition for Return of Seized Property with the United States District Court, Southern District of Florida. In this petition, plaintiff averred, *inter alia,* that he "was without knowledge that Hutchins was going to use his boat for conducting any illegal activities." On November 18, 1981, the District Court entered an Order of Default against the United States for failure to respond to the June 10, 1981 Petition for Return of Seized Property. The boat was released by the INS to plaintiff on February 16, 1982.

On August 25, 1981, the INS served Notice of Intention to fine plaintiff. The basis for the imposition of the fine was that the vessel belonging to plaintiff had been used to transport 17 undocumented aliens into the United States. Since no appeal or request for remission was filed by plaintiff to the August 25, 1981 Notice, the INS, in October 1981, fined plaintiff $17,000 ($1,000 for each undocumented alien transported aboard his vessel).

On August 3, 1982, plaintiff filed suit in the District Court for an award of damages relative to seizure of his boat. Plaintiff sought damages for (1) damage to the boat; (2) loss of use of the boat; (3) missing items from the boat; and (4) attorney fees. The District Court, on July 31, 1982 denied plaintiffs' motion for damages concluding that any claim for damages by plaintiff must be on a complaint filed under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq.,* and that plaintiff's Motion for Return of Property pursuant to Rule 41, Federal Rules of Criminal Procedure, would not support a claim for money damages for illegally seized and destroyed property, citing *Mayo v. United States,* 425 F.Supp. 119 (E.D.Ill.1977). Further, the District Court refused to construe plaintiff's motion as a complaint under the FTCA since there was no evidence plaintiff had exhausted his administrative remedies as required by the FTCA.

On November 10, 1982, plaintiff filed a Motion To Reopen the matter with the INS for the submission of new evidence regarding the immigration of 17 aliens on board plaintiff's boat. Based on a statement by plaintiff that he had no knowledge of, nor

---

**2.** It would appear that the INS did not undertake specific confirmation of the ownership, by title certificate, of the seized vessel until May of 1981. The INS assumed, it would appear, that Hutchins was the owner of the seized vessel since he had custody and control of the vessel at the time of the illegal activity.

did he consent to, illegal use of his boat by Hutchins, the District Director of the INS, exercising his discretion, on May 4, 1983 cancelled the fines previously assessed against plaintiff.

Plaintiff's three-Count complaint was filed in this court on November 29, 1984.

## II.

It is clear there was no express contract between plaintiff and defendant in this case. Plaintiff generally agrees, as he asserts in his brief that "[t]he substantive rights asserted in the complaint are implied-in-fact contract rights." An expansive and most liberal reading of plaintiff's complaint fails to show, by inference or otherwise, the basis for an implied-in-fact contract between defendant and plaintiff relative to the seizure of his vessel. The complaint sets forth the following material facts. First, defendant seized plaintiff's vessel and detained said vessel from May 30, 1980 until February 16, 1982. Second, plaintiff during this period of detention made numerous requests that defendant return the vessel to him. Third, defendant did not prove any violation of United States laws that would subject it to seizure. Finally, during detention the vessel was damaged and plaintiff was deprived of the use of said vessel. Plaintiff claims that these facts entitle him to damages.

The above recitation clearly fails to establish the existence of a contract implied-in-fact between defendant and plaintiff relative to his boat. Assuming *arguendo*, the existence of Government wrongdoing, the remedy, if any, would not be contractual but tortious, *i.e.*, interference with and damage to plaintiff's proper-

ty. It is well settled that this court has no tort jurisdiction. 28 U.S.C. § 1491 (1982), *Shanbaum v. United States*, 1 Cl.Ct. 177, 179 n. 3 (1982), *aff'd mem.*, 723 F.2d 69 (Fed.Cir.1983). Even if one were to conclude that the alleged facts gave rise to a contract implied-in-law, the court would be without jurisdiction. *Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925).

Plaintiff in his complaint has failed to allege, by inference or otherwise, the existence of a contract implied-in-fact. His complaint lacks the allegation elements necessary for a contract implied-in-fact to exist, *i.e.*, facts that show or suggest in some manner an agreement between the parties, a meeting of the minds and a mutual consent to be bound. There are no facts alleged that would evidence a promise, representation or statement by any authorized government official that plaintiff's boat would be damage-free or carefully handled during the detention period. *See Hatzlachh Supply Co. v. United States, supra*, 7 Cl.Ct. 743, 747, 748-51 (1985).

The seizure and detention of plaintiff's boat was done under the authority of law (8 U.S.C. § 1324(b)) and not under a contract, expressed or implied. There is in this case no implied-in-fact contract of bailment, nor are there any allegations in the complaint that would suggest this fact, which factual allegation the Supreme Court found sufficient in *Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980) to justify a trial to determine whether there was an implied-in-fact contract upon which the United States could be found liable for damages for breach thereof.[3] In this case, plaintiff points to no facts that would give rise to an

---

3. *Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980) involved goods that were lost following their seizure for customs violations. After the goods were seized, Hatzlachh, following appropriate procedure for relief, got the Customs Service to agree to return the forfeited materials to it upon Hatzlachh's payment of a $40,000 penalty. When the goods were subsequently returned to Hatzlachh, after payment of the penalty, some of the goods were missing. The agreement re-

ferred to above, along with certain statutes not applicable to this case, made the *Hatzlachh* case, in the words of the Supreme court "a strong case for the existence of an implied-in-fact contract properly to preserve and redeliver all the goods to *Hatzlachh*." 444 U.S. at 461, 100 S.Ct. at 648. On remand, the Claims Court found after a trial on the merits that there was no implied-in-fact contract. *Hatzlachh Supply Co. v. United States*, 7 Cl.Ct. 743 (1985).

implied-in-fact contract. *See Somali Development Bank v. United States,* 205 Ct.Cl. 741, 750–51, 508 F.2d 817, 822 (1974).

Plaintiff's complaint fails to state a claim upon which this court could grant it relief since it has failed to allege the existence of an express contract, *see Hargrove v. United States,* 1 Cl.Ct. 228, 230 (1982) or an implied-in-fact contract, *see Hatzlachh Supply Co. v. United States, supra,* 7 Cl.Ct. 743.

■ Plaintiff also grounds its right to relief in this court on alleged constitutional violations relative to the seizure and detention of and damage to its boat. First, plaintiff claims there was no probable cause for the seizure of its boat in violation of the Fourth Amendment to the Constitution.[4] Second, plaintiff claims its rights to due process of law under the Fifth Amendment were violated when it was not given notice or opportunity to contest the seizure.[5] The court, however, concludes that

since neither the Fourth Amendment nor the Fifth Amendment obligate the United States to pay money damages the court is without jurisdiction to grant relief on said claims. *See Royce v. United States,* 1 Cl.Ct. 225, 226 (1982); *Prevado Village Partnership v. United States,* 3 Cl.Ct. 219, 228 (1983) and cases cited therein.

In view of the above discussion, the court, without oral argument, concludes that plaintiff's complaint fails to state a claim upon which this court can grant relief. Accordingly, defendant's motion for summary judgment is granted, with plaintiff's complaint to be dismissed.

---

**4.** The affidavits submitted in support of defendant's motion establish rather clearly that probable cause existed for the seizure of plaintiff's boat. *See* 8 U.S.C. § 1324(b)(2) (1982). Plaintiff has not submitted any materials in opposition to defendant's affidavits. Defendant's motion, properly supported, may not be defeated by mere conclusionary allegations or denials set forth in the complaint. *Royal Indemnity Co. v. United States,* 178 Ct.Cl. 46, 51–52, 371 F.2d 462, 465 (1967). Defendant's support for its motion, when viewed in a light most favorable to plaintiff, is sufficient to show the absence of a genuine issue of fact. *See Adickes v. Kress,* 398 U.S.

144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

**5.** The seizure of plaintiff's boat was authorized by statute. 8 U.S.C. § 1324(b). While notice may not have been given plaintiff on May 29, 1980, said notice having been sent to Hutchins who had custody and control of the boat on the seizure date, plaintiff was able, on July 30, 1980 to file a petition for return of the boat to him in the manner suggested by the notice Hutchins was sent on May 29, 1980. The absence of actual notice to plaintiff, under the circumstances, may well have been harmless error.