NEWMAN, Circuit Judge,
dissenting.
Mr. Kam-Almaz, a United States citizen, returning to Dulles International Airport from international business travel, was accused of no wrongdoing, and his property was seized, detained, and damaged. He was without fault and without accusation. The court now condones this action and injury, denying all remedy for the destruction of his hard drive and the loss of valuable business information on his computer.
Mr. Kam-Almaz was travelling abroad for his work with the International Institute for Psychosocial Development, a nonprofit organization that specializes in post-disaster mental health education and consulting. On his return to Dulles Airport, upon routine Customs inspection his laptop computer was seized by a Customs agent, the agent stating that the computer files *1373 would be reviewed because he was a “person of interest.” Mr. Kam-Almaz objected that the computer contained valuable business data, and the agent allowed him to copy one file but not all of the computer files. The agent told Mr. Kam-Almaz that the laptop would be returned within seven days, and he was given a form receipt that said his property would be returned within thirty days. The laptop was not returned for more than two months, after persistent inquiry by Mr. Kam-Almaz. When returned, the hard drive and many of the computer files had been destroyed.
Mr. Kam-Almaz was accused of no wrongdoing, but his property was destroyed while in the custody of the government. The issue is not whether the government could have seized and detained his computer under its police power; the issue is whether the government, having taken possession of the computer and destroyed its hard drive and files, had any responsibility for the property and has any liability for the loss incurred. The court now condones and ratifies this injury to Mr. Kam-Almaz’s property, and holds that he is without remedy. I respectfully dissent.
DISCUSSION
This suit is brought under the Tucker Act. The government’s position is that the government action is not a Fifth Amendment taking of property because the property was taken in exercise of police power. The government also states its action did not create an implied-in-fact bailment contract because the computer was seized without mutual consent, and that all contracts require consent. My colleagues agree, and since the Supreme Court has held that no remedy is available on a theory of tort, transfer to a district court is not available, depriving Mr. Kam-Almaz of all access to remedy. However, as I shall explain, the court errs in holding that Mr. Kam-Almaz is without Tucker Act remedy for the destruction of his property by the government.
I. The Contract Claim
The court holds that Mr. Kam-Almaz’s claim for breach of an implied contract of bailment cannot lie, because his complaint states that his property was seized. The court reasons that a “seizure, essentially by definition, lacks mutual intent,” maj. op. at 1369, and thus that the government cannot be liable on contract theory because it took the property without consent. This holding is contrary to law and precedent.
In several rulings, typified by Kosak v. United States, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), the Court held, under circumstances of Customs seizure, that remedy may be available on a theory of implied-in-fact contract of bailment. In Kosak the Customs Service seized antiques and objects of art belonging to the plaintiff. The property was eventually returned, but was damaged while in the custody of the Customs Service. The plaintiff brought suit under the Federal Tort Claims Act. The Court held that the Tort Claims Act did not apply to injury to property detained by the Customs Service, but that “there exists at least one other remedial system,” including suit under the Tucker Act based on implied-in-fact contract:
[T]here exists at least one other remedial system that might enable someone in petitioner’s position to obtain compensation from the Government. If the owner of property detained by the Customs Service were able to establish the existence of an implied-in-fact contract of bailment between himself and the Service, he could bring suit under the Tucker Act, 28 U.S.C. § 1491. See Hatzlachh Supply Co. v. United States, 444 U.S. 460 [100 S.Ct. 647, 62 L.Ed.2d 614] (1980).
*1374 465 U.S. at 861 n. 22, 104 S.Ct. 1519. The Court observed that the Kosak property was “seized,” 465 U.S. at 849, 104 S.Ct. 1519, and did not distinguish seizure from involuntary detention.
In contrast, my colleagues hold that since Mr. Kam-Almaz alleged a seizure of his property, he is precluded from seeking relief under a contract theory. This holding conflicts with Kosak, and with Hatzlachh Supply Co., Inc. v. United States, 444 U.S. 460, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980), where the Court held that “the United States may be held liable for breach of an implied contract of bailment when goods are lost while held by the United States Customs Service (USCS) following their seizure for customs violations.” Id. at 461, 100 S.Ct. 647. The Court did not hold that “seizure” eliminated liability for breach of an implied contract of bailment of the seized goods. My colleagues have departed from clear precedent.
These are not new theories of government obligation and liability. In Alliance Assurance Co. v. United States, 252 F.2d 529 (2d Cir.1958), suit was brought in the district court under the Tucker Act for the value of goods which, “while being inspected for entry into this country, disappeared from the possession of the United States Customs.” Id. at 531. The government was held liable for breach of an implied contract, the court explaining:
The obligation of the government was not artificially created by law but rather stemmed from an implied promise to redeliver the goods as soon as customs had checked them against the invoice. Such a promise need not be formalized in a written agreement or even made the subject of a specific conversation. It arises from the implied promise to return the goods to the lawful owner after the customs inspection has been completed.
Id. at 532. The court held that the government “voluntarily undertook a bailment of the goods in question, a promise on its part to use due care during the term of the bailment can and should be implied.” Id.
Contrary to precedent, my colleagues hold that “because Kam-Almaz did not voluntarily deliver his property to the government, his complaint fails to allege any valid consideration.” Maj. op. at 1369. In Alliance the court explained that “the owner’s trusting him with the goods is a sufficient consideration to oblige him to a careful management,” and that “compelling reason to find consideration exists here because the bailment, although gratuitous, was compulsory and for the exclusive benefit of the bailee.” Id. at 533. This reasoning applies in Customs’ detention of Mr. Kam-Almaz’s computer and files, for the bailment was compulsory and solely for the benefit of the government.
The panel majority is incorrect in holding that Mr. Kam-Almaz’s claim is barred because he “did not voluntarily ‘deliver’ his equipment to Muldowan,” maj. op. at 1369, for, as the Supreme Court and other courts have explained, the involuntary detention with a promise to return the property confirms the implied-in-faet bailment. Mr. Kam-Almaz was given a written receipt for the laptop, stating in writing that it would be returned within thirty days. This is written confirmation of the contract of bailment.
The fact that Mr. Kam-Almaz did not voluntarily part with his laptop does not absolve the government from liability for the injury to his property. Acquiescence in Customs’ seizure for inspection of the property does not include authorization to destroy the property. As the Court stated in Kosak, the “owner of property detained by the Customs Service” has “at least” an implied-in-fact contract remedy.
*1375 Ignoring this direct precedent, my colleagues dismiss Mr. Kam-Almaz’s contract claim, seeking support in seizures of contraband or illegal activity. In Llamera v. United States, 15 Cl.Ct. 593 (1988), the Court of Federal Claims held that the government was not liable on a bailment theory for loss of a vessel that was seized by the Coast Guard for violation of law. The Court of Federal Claims found that the Coast Guard had told the plaintiff that the Coast Guard “was assuming no responsibility whatsoever for the vessel” it had seized, and “told plaintiffs brother that he could stay with the vessel or have someone board the vessel to watch it for him.” 15 Cl.Ct. at 597-98. Such explicit statement of absence of responsibility for the vessel is far removed from the facts of this case.
The panel majority also places inappropriate reliance on the criminal seizure in Alde, S.A. v. United States, 28 Fed.Cl. 26 (1993), where the government seized an aircraft from the Dominican Republic, on its arrival in Puerto Rico, on warrant for suspected violation of law. While in government control, the aircraft was damaged in a hurricane. The court held that the government was not liable on either contract or takings theory, because:
The Customs Service eventually did seek forfeiture of the aircraft. In light of these facts, it is difficult to fathom how plaintiff believed the Customs Service was indicating that it would safeguard the aircraft and its contents for later return to plaintiff. Quite to the contrary, the Customs Service was actively seeking to permanently deprive plaintiff of ownership of the aircraft through forfeiture proceedings.
28 Fed.Cl. at 32. The Aide ruling provides no support for this court’s holding that the government has no liability for the destruction of Mr. Kam-Almaz’s detained property, with no accusation of wrongdoing, before or after the detention.
The record supports Mr. Kam-Almaz’s position that the Customs agent stated the intent to return his property in a short time. The Customs agent was told that the computer held important and valuable business information, for the government permitted Mr. Kam-Almaz to copy one but not all of his files. The Complaint states:
At the time of seizure of his computer, Agent Craig Moldowan orally promised to return it to the Plaintiff within seven (7) days after a security review of its contents was performed by the Defendants. Agent Moldowan signed a written Customs Form 6051D, evidencing his written offer not to detain the Plaintiffs computer for longer than thirty days.... The Defendants breached their implied contract with Plaintiff when they failed to use due care in a prompt manner in the handling of the Plaintiffs computer, due to a Government, operator-caused system crash.... In addition, the Defendants failed to mitigate these damages by simply allowing the Plaintiff to make a copy of his operating software and data files, as he requested the defendants do.
Applying law and precedent to the pleadings, Mr. Kam-Almaz has stated a claim for relief on an implied-in-fact contract theory. The complaint was improperly dismissed for failure to state a claim.
II. The Takings Claim
The panel majority also dismisses Mr. Kam-Almaz’s Fifth Amendment takings claim, on the ground that his property was “seized and retained pursuant to the police power.” Maj. op. at 1371. However, this court has recognized that “it is insufficient to avoid the burdens imposed by the Takings Clause simply to invoke the ‘police powers’ of the state, regardless of the respective benefits to the public and burdens on the property owner.” Acadia Tech., Inc., Global Win Tech., Ltd. v. United *1376 States, 458 F.3d 1327, 1330, 1332-33 (Fed.Cir.2006) (“[A] taking does not result simply because the government acted unlawfully, nor does a takings claim fail simply because the government’s conduct is subject to challenge as unlawful.”).
Although protection of the nation’s borders is a police activity, when the government in its performance injures an innocent person, that person is not required to “bear public burdens which, in all fairness and justice, should be borne by the public as a whole.” Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). Mr. Kam-Almaz is not excluded from access to his Fifth Amendment rights, for the Fifth Amendment applies to government actions which seize and injure private property. See, e.g., Kimball Laundry Co. v. United States, 338 U.S. 1, 3-4, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949) (ordering just compensation when the government took temporary possession of a laundry plant); United States v. General Motors Corp., 323 U.S. 373, 375, 65 S.Ct. 357, 89 L.Ed. 311 (1945) (requiring compensation from the government for using a portion of a building leased by the plaintiff).
The cases relied on by the panel majority all involve a seizure of contraband or other violation of law. Neither Mr. Kam-Almaz nor his property has been accused of or implicated in any wrongdoing. In Acadia, supra, the seized property allegedly bore a counterfeit trademark. In AmeriSource Corp. v. United States, 525 F.3d 1149, 1150 (Fed.Cir.2008), drugs were seized pursuant to charges of “conspiracy, unlawful distribution of prescription pharmaceuticals, operating an unregistered drug facility, and conspiracy to commit money laundering.” In Bennis v. Michigan, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), the Court upheld the forfeiture of an automobile that had been used in criminal activity, although the other owner of the automobile was innocent. These cases all relate to confiscation or seizure based on unlawful acts. In contrast, no wrong by Mr. Kam-Almaz or his computer was alleged by the government.
It is incorrect to apply criminal law when no crime is alleged. Precedent supports Mr. Kam-Almaz’s pleading of a takings claim.
III. Other Possible Remedies?
The panel majority refers to “whatever claim Kam-Almaz may have against the United States,” as if he simply chose the wrong forum. However, Customs injury cannot be remedied by tort claim, for in Kosak the Court established that “the Tort Claims Act does not cover suits alleging that customs officials injured property that had been detained by the Customs Service.” 465 U.S. at 862, 104 S.Ct. 1519. As mentioned supra, the Kosak Court stated that “at least” the Tucker Act might provide a remedy. Id. at 861 n. 22, 104 S.Ct. 1519.
Whatever the remedial theory, the government is not absolved of responsibility for its misfeasance in dealing with its citizens. The Court of Claims “holds and speaks a nation’s conscience,” see tribute to Chief Judge Peele, 48 Ct. Cl. XXV (Feb 11, 1913). The court has fulfilled this proud tradition since its inception:
A unique and permanent contribution that the Court of Claims has made over the span of its long life as a public institution is in how it helps make Government officials accountable to the citizens whose servants they are, but whose relationship to their masters is sometimes forgotten. In helping to inspire a high standard of conduct for Government officials, it serves the nation well. If there is a constant thread running through the court’s decisions, it would seem to be in holding the Government *1377 and its officials to a strict code of conduct in their relations with citizens.
Judge Marion Bennett, in The United States Court of Claims: A History 170-72 (1978). The History explained that “[s]uch a court is the flower of a free society.” Id.
Persons injured by unjustified damage to their property detained by Customs agents are not excluded from access to the courts. This court’s endorsement of such exclusion misconstrues traditional and constitutional theory, and denies the responsibility carved into this court’s entrance, that: “It is as much a duty of government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals.” Abraham Lincoln, Dec. 3,1861.
I respectfully dissent.